Teresa **MAHER,** Plaintiff,

v.

**ASSOCIATED SERVICES FOR THE BLIND,** Defendant.

No. 95–CV–4429.

United States District Court, E.D. Pennsylvania.

May 28, 1996.

---

B. Joyce Thompson Dale, Media, PA, for Plaintiff.

J. Freedley Hunsicker, Jr., Amy E. Feldman, Drinker Biddle & Reath, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

#### I

This Memorandum and Order resolves the motion for summary judgment filed by Defendant Associated Services for the Blind ("ASB") in this employment discrimination action brought by Teresa Maher, a Pennsylvania citizen and former ASB employee. The thrust of Ms. Maher's complaint is that ASB subjected her to pervasive gender-based harassment so severe as to create an abusive and hostile work environment. Ms. Maher seeks damages under the following four theories of liability: (1) hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2000e–17 (1994); (2) constructive discharge under Title VII; (3) intentional infliction of emotional distress under Pennsylvania law; and (4) negligent retention and supervision under Pennsylvania law.

In the instant motion for summary judgment, ASB argues that Ms. Maher has failed to raise a genuine issue of material fact in support of any of the claims contained in her complaint. A district court is authorized to award summary judgment "if the pleadings, depositions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to survive a summary judgment motion, the non-moving party must raise "more than a mere scintilla of evidence in its favor" and may not merely rely on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). Boiled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

#### II

ASB is a not-for-profit Pennsylvania corporation that provides services to blind and visually impaired persons in the Philadelphia area. In 1991, ASB hired Ms. Maher and assigned her to a sales clerk position in SenseSations, a store specializing in goods that aid the blind. When she began working at the store, she received a copy of ASB's personnel regulations and was aware that ASB's policy was to prohibit sexual harassment. The assistant manager at SenseSations was William Ankenbrant, a man suffer-

ing from total blindness. Ms. Maher alleges that Mr. Ankenbrant sexually harassed her repeatedly over the course of her tenure with ASB. For example, on Ms. Maher's first day of work, Mr. Ankenbrant hugged her and ran his hands up and down her back, remarking that "[t]here were people ahead of you that just didn't work out, but I can tell that you are."

Although Ms. Maher informed him that she did not approve of his conduct and instructed him to desist, Mr. Ankenbrant continued to engage in this sort of behavior at various times during 1991, 1992 and 1993. Ms. Maher states that Mr. Ankenbrant hugged her on approximately seven to ten occasions during this time; that he kissed her on her forehead, ears and lips; and that on one occasion, he slid his hand underneath her shirt, touching her back for approximately thirty seconds. Mr. Ankenbrant also engaged in conversation that Ms. Maher considered inappropriate. For example, when Ms. Maher used the bathroom, Mr. Ankenbrant mentioned that he wished he were the "tidy bowl man." Moreover, Mr. Ankenbrant would frequently use the term "bite me" in Ms. Maher's presence, a phrase she interpreted as a reference to oral sexual intercourse. Mr. Ankenbrant continued to use this term in Ms. Maher's presence, despite her repeated requests that he refrain from doing so. She alleges that on one occasion, Mr. Ankenbrant used the term "bite me" in the presence of Ms. Maher and their mutual supervisor, John Corrigan, who took no immediate corrective action.

Ms. Maher first complained to the ASB administration in April 1993, notifying its Associate Executive Director, Lynn Dellinger, of Mr. Ankenbrant's frequent use of the phrase "bite me." She also brought to management's attention sexually suggestive comments Mr. Ankenbrant made after he accidently bumped into Ms. Maher, such as "that was nice, can we do that again?" and "did that turn you on?" Ms. Maher also complained as to Mr. Ankenbrant's behavior generally:

I had also talked with [Ms. Dellinger] about how he upstages me, the problem with his temper, he spends a lot of time in

the basement, you know, when he's supposed to be upstairs. He is smothering. He doesn't give me any privacy.... He doesn't take no for answer, and ... he belittles me.

Maher Dep. at 107. Ms. Maher did not inform Ms. Dellinger as to the seven to ten hugging and kissing incidents that had occurred over the previous two years.

In response to these complaints, Ms. Dellinger addressed a memorandum to Mr. Ankenbrant that described his comments as "inappropriate and offensive." Moreover, Ms. Dellinger notified him that "sexual harassment of any kind is prohibited at [ASB]" and that a future violation of the company's policy regarding sexual harassment would subject him "to immediate discharge." Mr. Ankenbrant addressed a letter to management on May 4, in which he denied the accusations. On May 6, Mr. Corrigan, who had overheard the "bite me" comments, stated that he did not consider them to be of a sexual nature. As a result of Mr. Corrigan's statement, Ms. Dellinger addressed a revised memorandum to Mr. Ankenbrant on May 7, in which she informed him that in light of Mr. Corrigan's statement, no immediate action would be taken against him. However, Ms. Dellinger reiterated ASB's view that "sexual harassment is a serious offense" and that "[a]n employee can be terminated without any warning whenever sexual harassment occurs." At Mr. Ankenbrant's request, all materials relating to the sexual harassment issue were removed from his personnel file.

After receiving the warnings in April and May of 1993, Mr. Ankenbrant never again hugged or kissed Ms. Maher, or directed a sexually suggestive comment toward her. Nevertheless, on June 16, Ms. Maher went to Ms. Dellinger to complain about the cold, unfriendly and sarcastic manner that characterized Mr. Ankenbrant's dealings with her in the aftermath of her initial complaint. For example, when Ms. Maher remarked that all was quiet in the store one morning, Mr. Ankenbrant responded, "Oh good. Then I shouldn't have a problem controlling my temper." In her deposition, Ms. Maher described this and similar comments as "[not]

necessarily sexual harassment, but he was mocking—he was mocking me." Maher Dep. at 106. Ms. Maher then informed Ms. Dellinger of the hugging and kissing incidents that had occurred prior to April 1993. Ms. Dellinger stated that Mr. Ankenbrant would be fired if such behavior continued.

On June 21, Ms. Maher met with Catherine Williams, ASB's Director of Personnel, to discuss the situation involving Mr. Ankenbrant. Ms. Williams asked Ms. Maher if she wished to continue with the investigation. After considering the matter for two days, Ms. Maher decided not to proceed with the investigation, basing her decision on her feeling that ASB management would not support her complaint. Following the meeting with Ms. Williams, Ms. Maher submitted a written summary of the various incidents for inclusion in a separate file ASB was keeping regarding these events. Ms. Maher asserts that ASB never investigated the hugging and kissing incidents.

Ms. Maher continued to work at SenseSations for another thirteen months following her meeting with Ms. Williams. During that time, Ms. Maher reports that Mr. Ankenbrant continued to make sarcastic comments regarding the events at issue here. For example, Mr. Ankenbrant asked her if she wanted "a piece of chocolate that's flat on the bottom, pointed at the top, and wrapped in foil." When she asked if he was referring to a Hershey's Kiss, he responded "yeah, well, yeah it's inappropriate for me to ask for a kiss." On other occasions, he offered her a hot chip and told her that she needed "some spice in your life," and referred to her as a "raisin" and remarked "this way you know I won't bite you." Ms. Maher submitted her letter of resignation on July 22, 1994.

### III

#### A. *Hostile Work Environment*

■ Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). The United States Supreme Court has concluded that a plaintiff may establish a Title VII violation if she can show that gender-based discrimination created a hostile or abusive working environment. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). Title VII does not protect a plaintiff who experiences conduct that is merely offensive or annoying. Instead, Title VII is implicated where the conduct is " 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (quoting *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405).

■ Our Court of Appeals has set forth a five part test for the district courts to apply in a hostile work environment case. Accordingly, a female Title VII plaintiff can successfully bring a gender-based discrimination claim against her employer only if she shows that (1) she suffered intentional discrimination on account of her gender; (2) the discrimination was pervasive and regular; (3) she was detrimentally affected by the discrimination; (4) the discrimination would detrimentally affect a reasonable woman in the plaintiff's position; and (5) the existence of respondeat superior liability. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990); *see West v. Philadelphia Elec. Co.,* 45 F.3d 744, 753 (3d Cir.1995) and *Spain v. Gallegos,* 26 F.3d 439, 447 (3d Cir.1994) (applying *Andrews* test).

■ In determining whether plaintiff has demonstrated the existence of respondeat superior liability, the district courts have been instructed to apply principles of agency law. *Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408. Accordingly, "if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment and failed to take prompt and adequate remedial action, the employer will be liable." *Andrews,* 895 F.2d at 1486. If, however, the employer promptly and adequately addresses the situation once it learns of the harasser's conduct, the employer cannot be liable. *Bouton v. BMW of N. Am., Inc.,* 29 F.3d 103, 107 (3d Cir.1994). Thus, "an effective grievance pro-

cedure—one that is known to the victim and that timely stops the harassment—shields the employer from Title VII liability for a hostile environment." *Id.* at 110.

■ ASB contends that it must be awarded summary judgment because (1) Mr. Ankenbrant's alleged conduct was not sufficiently pervasive and regular to give rise to a hostile work environment claim, and (2) the remedial measures ASB enacted were adequate. Upon review of the evidence submitted by the parties viewed in the light most favorable to Ms. Maher, we conclude that even if Ms. Maher could show that she endured a hostile working environment, the corrective steps taken by ASB were effective and prevented further objectionable conduct. As we noted above, Ms. Maher first alerted ASB management as to Mr. Ankenbrant's behavior in April of 1993. ASB promptly issued Mr. Ankenbrant a stern warning, informing him that future instances of inappropriate activity would result in the termination of his employment. From that point forward, as Ms. Maher concedes in her deposition testimony, the alleged sexual harassment ceased. We must therefore conclude that the corrective measures ASB employed were effective. Accordingly, *Bouton* requires us to award summary judgment to ASB with respect to Ms. Maher's hostile work environment claim.

■ In her effort to defeat the instant motion, Ms. Maher contends that the corrective measures employed by ASB were not effective. In support of this argument, she notes that the letter of warning was later removed from Mr. Ankenbrant's personnel file, that Mr. Ankenbrant was neither discharged nor transferred to another position, and that ASB failed to pursue the hugging and kissing allegations with sufficient fervor. This line of argument misses the point, however. The effectiveness of the remedial steps is not measured by the extent to which the employer disciplines or punishes the alleged harasser; *Bouton* makes it clear that corrective steps are effective if they stop the alleged sexual harassment. Measured by this standard, the steps taken by ASB were indisputably effective. A summary judgment award in ASB's favor as to the hostile work environment claim is therefore appropriate.

## B. *Constructive Discharge*

■ Our Court of Appeals first adopted the doctrine of constructive discharge in a Title VII case in *Goss v. Exxon Office Systems Co.,* 747 F.2d 885 (3d Cir. 1984). In that case, the court endorsed the application of an objective standard, pursuant to which an employer could be liable if it "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Id.* at 888. Thus, as a threshold matter, the plaintiff must show that the employer condoned acts of discrimination violative of Title VII. *Dickerson v. New Jersey, Dep't of Human Servs.,* 767 F.Supp. 605, 617 (D.N.J.1991). The mere fact that the plaintiff feels uncomfortable or considers her working environment unduly stressful is an insufficient basis for a constructive discharge claim. *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986).

■ As we noted above, the undisputed evidence shows that ASB management acted promptly to put an end to the alleged harassment once it became aware of Mr. Ankenbrant's conduct. Under such circumstances, we conclude that a reasonable jury could not render a verdict in Ms. Maher's favor as to her constructive discharge claim, since there is no evidence from which a jury could infer that ASB permitted the discriminatory behavior to continue. As for Mr. Ankenbrant's conduct between April 1993 and the time of Ms. Maher's resignation fifteen months later—including the sarcastic commentary relating to her initial complaints—we conclude, and Ms. Maher concedes, that such conduct simply does not rise to the level of workplace sexual harassment actionable under Title VII. Accordingly, we must award summary judgment to ASB as to the constructive discharge claim.

## C. *Common Law Claims*

■ Having awarded summary judgment to ASB as to Ms. Maher's federal claims, we now conclude that the pendent claims should

be dismissed pursuant to Rule 12(b)(1) for want of jurisdiction over the subject matter. Both Ms. Maher and ASB are citizens of Pennsylvania; thus, we cannot exercise our diversity jurisdiction over the pendent claims. 28 U.S.C. § 1332. Finally, we are aware of no "special circumstances" that would justify the invocation of our supplemental jurisdiction. *Shaffer v. Board of School Directors,* 730 F.2d 910, 912 (3d Cir. 1984) (court should not base jurisdiction over pendent claims merely on the time and energy invested in federal forum). Accordingly, the pendent claims will be dismissed without prejudice. *See TM Marketing, Inc. v. Art & Antiques Assocs., L.P.,* 803 F.Supp. 994, 997 (D.N.J.1992) ("When it becomes apparent that subject matter jurisdiction is lacking, the court must dismiss the action regardless of the stage of the litigation.").

## IV

For the reasons stated above, we will award summary judgment to ASB as to Counts I and II of Ms. Maher's complaint, and dismiss Counts III and IV without prejudice pursuant to Fed.R.Civ.P. 12(b)(1).