United States Court of Appeals,

Fifth Circuit.

No. 96-50097

Summary Calendar.

Delores FARPELLA-CROSBY, Plaintiff-Appellee-Cross-Appellant,

v.

HORIZON HEALTH CARE, A New Mexico Corporation, Defendant-Appellant-Cross-Appellee.

Oct. 21, 1996.

Appeals from the United States District Court for the Western District of Texas.

Before HIGGINBOTHAM, WIENER and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Dolores Farpella-Crosby brought suit against Horizon Health Care, alleging hostile work environment sexual harassment in violation of Title VII and a common-law cause of action under Texas law for intentional infliction of emotional distress. The district court granted Horizon's motion for directed verdict on Farpella-Crosby's intentional infliction of emotional distress claim. Farpella-Crosby's Title VII claim was tried to a jury, which returned a verdict in her favor and awarded compensatory and punitive damages. Horizon moved for judgment *non obstante veredicto* as to liability, compensatory damages, and punitive damages. The district court granted judgment n.o.v. as to the punitive damage award, but upheld the $7,500 compensatory damage award.

On appeal, Horizon challenges the district court's refusal to render a judgment n.o.v. on liability and on mental anguish damages. The determination of Horizon's appeal requires a detailed analysis of whether the specific facts and circumstances reflected by the evidence presented to the jury are sufficient to support the jury's findings and award. We are governed by the standard of review set out in *Boeing Co. v. Shipman,* 411 F.2d 365, 374-75 (5th Cir.1969) (en banc). By cross-appeal, Farpella-Crosby in turn complains of the judgment n.o.v. on punitive damages. We affirm.

I.

1

Farpella-Crosby was employed by Horizon at a nursing home known as Mountain View Place beginning in June of 1993. Farpella-Crosby worked as a treatment nurse and was charged with treating and monitoring the residents' decubitus ulcers and other skin-related afflictions. Beginning in February of 1994, Jose Blanco, director of nursing at the facility, engaged in the conduct that gave rise to this lawsuit.[1]

Many of Farpella-Crosby's complaints stem from Blanco's frequent comments attributing Farpella-Crosby's large number of children to a proclivity to engage in sexual activity. Blanco repeatedly commented that he "knew what she liked to do" because she had seven children and that she "must not have a television." At a baby shower held at the facility for another employee, Blanco joked to the group that Farpella-Crosby "doesn't know how to use condoms." Blanco also frequently inquired about Farpella-Crosby's sexual activity. He would often question her and Denise Vujevic, her co-worker, about where they had been the night before (while off duty), whether they had taken men home, and whether they "got any." Farpella-Crosby and Vujevic both testified that Blanco made similar comments two or three times a week. Farpella-Crosby testified that the comments were so frequent that she could not possibly remember each instance. Blanco threatened Farpella-Crosby with her job on numerous occasions when she asked him to stop making these comments.

On one occasion, after Farpella-Crosby had eaten lunch in her office with a boyfriend, Blanco said that "when you open the door [to the office], the smell of fish just hits you in the face. You shouldn't be doing that kind of thing at work." Robert Martinez, a social worker at Mountain View Place, testified that he remembered Blanco making this comment and told him that he should stop. Blanco did not deny making the comment, but testified that he did not recall it. Blanco essentially admitted that he did question Farpella-Crosby about her personal life, but claimed that he did so because he believed the lack of sleep resulting from sexual activity could affect her work performance.

---

[1]Farpella-Crosby also testified as to one act of sexual harassment by the assistant director of nursing, Humberto Arriola.

Farpella-Crosby also complained of hostile treatment by Blanco that was not overtly related to her gender. Blanco often asked her to perform menial tasks outside of her job description, such as refilling his coffee cup, washing his dirty dishes, and making copies for him. Blanco and Humberto Arriola, assistant director of nursing, would also make fun of her by blowing into her ear and pretending that they could feel wind come out the other side of her head.

## II.

The resolution of this appeal, as indicated above, turns on the application of the *Boeing* standard for reviewing the sufficiency of the evidence supporting the jury's verdict in connection with a judgment *non obstante veredicto. Boeing Co. v. Shipman,* 411 F.2d 365, 374-75 (5th Cir.1969) (en banc); *Maxey v. Freightliner Corp.,* 665 F.2d 1367, 1371 (5th Cir.1982). A judgment n.o.v. should be granted only when the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. *Boeing,* 411 F.2d at 374; *Maxey,* 665 F.2d at 1371. The court considers all the evidence—not just the evidence that supports the nonmovant's case—in the light most favorable to the nonmovant and indulges all reasonable inferences in favor of the nonmovant. If there is substantial evidence opposed to the motion, the motion should be denied. *Maxey,* 665 F.2d at 1371. Substantial evidence means evidence of such quality and weight that reasonable and fairminded persons in the exercise of impartial judgment might reach different conclusions. *Id.* A mere scintilla of evidence is insufficient to present a question for the jury. *Boeing,* 411 F.2d at 374. With these standards in mind, we turn to the substantive law governing hostile work environment Title VII claims.

## III.

In support of a hostile work environment sexual harassment claim, an employee is required to show that (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a term, condition, or privilege of employment (*i.e.,* that the sexual harassment was so pervasive or severe as to alter her conditions of employment and create an abusive working

3

environment); and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Jones v. Flagship Int'l,* 793 F.2d 714, 719-20 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). To be actionable, the challenged conduct must create an environment that a reasonable person would find hostile or abusive. *Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir.1996) (citation omitted). Whether an environment is hostile or abusive depends on "the totality of circumstances." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, ----, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993); *DeAngelis v. El Paso Municipal Police Officers Ass'n,* 51 F.3d 591, 594 (5th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995).

A.

To be actionable under Title VII, sexual harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment. Sexually discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII. *Harris,* 510 U.S. at ---- - ----, 114 S.Ct. at 370-71 (citing *Meritor Sav. Bank FSB v. Vinson,* 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 2405, 2405-06, 91 L.Ed.2d 49 (1986)). But the "mere utterance of an ... epithet which engenders offensive feelings in an employee" is not alone sufficient to support Title VII liability. *Weller,* 84 F.3d at 194 (citing *DeAngelis,* 51 F.3d at 594 (quoting *Meritor Sav. Bank,* 477 U.S. at 67, 106 S.Ct. at 2405)).

Horizon contends that the evidence was insufficient to support a finding that the harassment affected a term, condition, or privilege of Farpella-Crosby's employment. Viewing the evidence in the light most favorable to Farpella-Crosby, there is substantial evidence from which the jury could have concluded that Blanco's comments and questions were sufficiently severe and pervasive as to alter the conditions of her employment and create an abusive working environment. Both Farpella-Crosby and her co-worker testified that Blanco inquired about Farpella-Crosby's sexual activity or

4

made comments similarly offensive two or three times a week.[2] The record reflects that Blanco made many egregious comments to Farpella-Crosby, some in front of co-workers, that in combination with his frequent inquisition about her sexual activity were sufficiently severe and pervasive to create a hostile work environment.[3]

B.

An employer is liable for the discriminatory acts of an employee only if it knew or should have known of the employee's offensive conduct and failed to take steps to repudiate that conduct and eliminate the hostile environment. *Nash v. Electrospace Sys., Inc.,* 9 F.3d 401, 404 (5th Cir.1993) (citing *Jones,* 793 S.W.2d at 720). As this court noted in *Waltman v. International Paper Co.,* the type and extent of notice necessary to impose liability on an employer under Title VII are the subject of some uncertainty. 875 F.2d 468, 478 (5th Cir.1989) (concluding that three separate complaints to higher management constituted sufficient notice).

Whether Farpella-Crosby presented sufficient evidence to support the jury's finding that Horizon knew or should have known of the harassment is undoubtedly a close question. To show that Horizon knew or should have known that she was being subjected to a hostile work environment, Farpella-Crosby relies primarily on her conversations with human resource directors at the Mountain View Place facility. Both of the human resource directors testified that under the company's sexual harassment policy, a report of sexual harassment to a human resources director would constitute

---

[2]Sex-neutral hostile conduct cannot be used to support a hostile environment claim. Title VII does not protect employees from hostile conduct that is not based on their protected status. *See Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir.1995). Because the harassment that was unquestionably based on gender provides a sufficient basis for finding that the harassment created an abusive working environment, we need not reach whether Blanco's demands that Farpella-Crosby perform menial tasks were sex-neutral or sex-based hostile conduct.

[3]This case is distinguishable from *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir.1996), in which this Court held that a single joke told by a supervisor involving condoms was insufficient to create an hostile work environment. Blanco's joke about Farpella-Crosby's knowledge of condoms was directed specifically toward Farpella-Crosby and her seven children and was not an isolated incident.

5

notice to Horizon.[4]

After testifying extensively about Blanco's comments and questions relating to her sexual activities, Farpella-Crosby was asked whether she "report[ed] these comments and these types of intrusions into [her] personal life." She responded affirmatively. She told Belinda Callejo, a human resource director at Mountain View Place, that Jose Blanco "was making comments into [her] personal life" and that he made "personal comments" that she did not like. Farpella-Crosby testified that she talked to Callejo about her problems frequently. Although she testified that she did not give Callejo any specific examples, she did tell Callejo that she found Blanco's comments to be offensive. Callejo agreed that Farpella-Crosby had told her of job-related problems, but denied that Farpella-Crosby had ever mentioned sexual harassment. Callejo also testified, however, that an employee need not say explicitly "I am being sexually harassed" before Callejo would take action as human resources director. Callejo said that she would consider it sufficient notice if Farpella-Crosby had said that "things are being said to me."

Gigi Hopper replaced Callejo as human resource director on May 1, 1994. Farpella-Crosby also complained to Hopper. She told Hopper that Blanco was "making comments into [her] personal life" and that she considered the comments to be "offensive or unwelcome." Farpella-Crosby testified that she intentionally failed to report specific instances of sexual harassment in a statement she gave to Hopper because she "had told Belinda [Callejo]" and thought "somebody would do something about what I had told Belinda."[5]

After reviewing all the evidence consistent with the standard announced in *Boeing,* we are unable to declare that reasonable jurors could not have concluded that Horizon knew or should have

---

[4]The first time that Horizon received written notice of Farpella-Crosby's claims was on July 27, 1994. But Horizon's sexual harassment policy did not require a written notification to management of sexual harassment.

[5]Another factor relevant to whether Horizon knew or should have known of Blanco's conduct is whether the conduct "took place in public, under the eye of co-workers or supervisors." *See Nash,* 9 F.3d at 404. On several occasions, Blanco made offensive comments in the presence of Farpella-Crosby's co-worker Robert Martinez and Humberto Arriola, assistant director of nursing.

known of Blanco's harassing behavior.

Substantial evidence also supports a finding that Horizon failed to take prompt remedial action. Callejo's uniform response to Farpella-Crosby's complaints was "Hang in there. Something's got to be done." Nothing, however, was done. Viewing the evidence in the light most favorable to Farpella-Crosby, she endured nearly six months of Blanco's abusive behavior before Horizon took any action. There is no evidence that Callejo performed any investigation of Farpella-Crosby's complaints or that she took any steps to remedy the situation. This was not prompt remedial action.

## IV.

## A.

Horizon next attacks the jury's award of compensatory damages in the amount of $7,500. Horizon argues that the evidence was insufficient to support the jury's award of mental anguish damages, citing *Parkway Co. v. Woodruff,* 901 S.W.2d 434 (Tex.1995). Horizon's reliance on state law is misplaced. Compensatory damages in a hostile work environment Title VII case are governed by 42 U.S.C. § 1981a.[6]

The Supreme Court in *Harris v. Forklift Systems, Inc.* made clear that psychological injury is not a prerequisite to bringing a Title VII hostile work environment claim. 510 U.S. 17, ---- - ----, 114 S.Ct. 367, 370-71, 126 L.Ed.2d 295 (1993). As the Court explained, a working environment can be so abusive as to violate Title VII, irrespective of whether the claimant suffers psychological injury:[7]

> ... Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance,

[6]The Civil Rights Act of 1991 expanded the remedies available to a Title VII claimant to include compensatory damages for mental anguish and punitive damages. 42 U.S.C. § 1981a; *Landgraf v. USI Film Prods.,* 511 U.S. 244, ---- - ----, 114 S.Ct. 1483, 1490-91, 128 L.Ed.2d 229 (1994).

[7]The Court in *Harris* addressed only whether psychological injury was required to support a hostile work environment claim. The Court did not address the circumstances under which mental anguish damages can be recovered for a violation of Title VII resulting from a hostile work environment. *See Harris,* 510 U.S. at ---- - ----, 114 S.Ct. at 370-71.

discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.

*Harris,* 510 U.S. at ---- - ----, 114 S.Ct. at 370-71. It is against this backdrop that we turn to the sufficiency of the evidence supporting the jury's award of mental anguish damages.

This circuit has recently spoken on the specificity of proof required to support an award of mental anguish damages in the context of constructive discharge in violation of § 1981 and retaliatory discharge in violation of Title VII. *See Patterson v. P.H.P. Healthcare Corp.,* 90 F.3d 927, 937-41 (5th Cir.1996). The court set the bar high. The court held that to recover mental anguish damages, the claimant must satisfy the specificity requirement set out in *Carey v. Piphus,* 435 U.S. 247, 255-56, 98 S.Ct. 1042, 1048, 55 L.Ed.2d 252 (1978). *Patterson,* 90 F.3d at 938, 939-40. To meet this requirement, the claimant must show that the harassment "manifests some specific discernable injury to the claimant's emotional state." *Id.* at 940.

Although *Patterson* did not involve the award of mental anguish damages in the context of a hostile work environment claim, we find its discussion of mental anguish damages to be instructive. In *Patterson,* the court looked to a discussion of the "manifestation" of emotional harm found in an EEOC policy statement. *Id.* at 939 (citing EEOC POLICY GUIDANCE NO. 915.002 § II(A)(2) (July 14, 1992)). The Commission lists numerous ways in which emotional harm may manifest itself, including physical manifestations as well as other types of manifestations, such as stress and humiliation. EEOC POLICY GUIDANCE NO. 915.002, at 10-12 (footnotes omitted).

The *Patterson* court reviewed the award of mental anguish damages to Donna Patterson, who was the head nurse at the facility where Nicholas Brown, Patterson's co-plaintiff, worked. Patterson brought suit under Title VII, alleging that she was discharged in retaliation for her opposition to discriminatory practices at the facility where she and Brown were employed. The district court awarded Patterson $150,000 for mental anguish flowing from her discharge and a subsequent period of unemployment. This court vacated the mental anguish award and enunciated the defects in

8

Patterson's proof, including a lack of evidence that she was humiliated or subjected to a hostile working environment:

> No corroborating testimony was offered to support Patterson's testimony. *No evidence suggests that Patterson was humiliated or subjected to any kind of hostile work environment.* Further, no expert medical or psychological evidence exists to support a claim for emotional harm.

*Id.* at 941 (emphasis added). Unlike Patterson, who presented no evidence that she "was humiliated or subjected to any kind of hostile work environment," Farpella-Crosby presented both evidence that she was subjected to a hostile work environment and evidence from which the jury could have inferred that she experienced stress and humiliation as a result of Blanco's abuse. *See id.*

Farpella-Crosby's testimony also goes beyond that of Nicholas Brown. Brown brought both a constructive discharge claim under § 1981[8] and a hostile work environment claim. After a bench trial, the district court awarded Brown $40,000 in mental anguish damages in connection with his constructive discharge claim.[9] Holding that the trial court had abused its discretion in awarding mental anguish damages, this court vacated that award. *Patterson,* 90 F.3d at 945.

Brown testified that he felt "frustrated" and "real bad" because his supervisor judged him by the color of his skin. He described his work environment as "unbearable" and said that it was "tearing [his] self-esteem down." Brown also stated that it "hurt" and made him "angry" and "paranoid" to know that his supervisor referred to him as a "porch monkey" or a "nigger." *Id.* at 939. Brown's testimony would support a finding that he was hurt, angry, and frustrated, but the court in *Patterson* explained, hurt, anger, and frustration are simply "part of life." *Id.* at 940. None of these are listed in the EEOC policy statement. Farpella-Crosby's testimony reflected that her emotional harm went far beyond hurt, anger, and frustration to manifest itself in the form of humiliation and stress.

Farpella-Crosby testified that she felt "very embarrassed, very belittled," "very disgusted,"

---

[8]This circuit applies the same standard to an award of mental anguish damages under Title VII as that applied under § 1981. *Patterson,* 90 F.3d at 940.

[9]The district court awarded no damages to Brown based on his hostile work environment claim. *Patterson,* 90 F.3d at 934.

"hopeless," "about two inches high," and "started to feel pretty stupid" as a result of Blanco's harassment. She also felt that she must "have done something wrong to deserve somebody to talk to me like that." Significantly, Farpella-Crosby testified that her work environment was "very stressful" and that she was "embarrassed every time [she] went in there." Farpella-Crosby's testimony is corroborated by her friend and co-worker Denise Vujevic, who testified that she and Farpella-Crosby began to go everywhere together at work because they believed that there was "safety in numbers." This reflected Farpella-Crosby's sense of distress and vulnerability if left alone to deal with the work environment at Mountain View Place. Farpella-Crosby also testified that she attempted to gain employment elsewhere.

Thus, the jury could conclude based on this record that Farpella-Crosby suffered emotional harm that manifested itself as humiliation and stress. Farpella-Crosby's own testimony combined with the testimony of Denise Vujevic is sufficient to support the jury's award of mental anguish damages.

## B.

By cross-appeal, Farpella-Crosby challenges the judgment n.o.v., which denied her punitive damages awarded by the jury. To recover punitive damages under Title VII, the plaintiff must show that the defendant acted with "malice or with reckless indifference...." 42 U.S.C. § 1981a(b)(1). Viewing the entire record in the light most favorable to Farpella-Crosby, we conclude that no reasonable juror could conclude that Horizon itself acted with malice or with reckless indifference. Further, under the particular facts of this case, no applicable tool of agency law would justify imposing punitive damages on Horizon based on Blanco's conduct.

## V.

For these reasons, we AFFIRM the district court's refusal to grant a judgment n.o.v. on liability and compensatory damages and we AFFIRM the judgment n.o.v. on punitive damages.

10