THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-50868
Summary Calendar

_____

MYRNA ESTEP,

Plaintiff-Appellant,

versus

UNIVERSITY OF TEXAS AT AUSTIN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
(A-96-CV-74)

_____

June 5, 1998

Before JOLLY, BENAVIDES, and PARKER, Circuit Judges.

PER CURIAM:[*]

In February 1996, Myrna Estep brought suit against The University of Texas at Austin

claiming that she had been sexually harassed and retaliated against in violation of Title IX. The

district court granted the University's motion for summary judgment. Estep appealed. We affirm.

In 1994, Estep was a doctoral candidate in the University's Philosophy Department. In

her complaint, she alleges that her doctoral advisor, Dr. Allaire, once grabbed her by the

shoulders in a sexually overpowering way.[1] Estep promptly informed the chair of the Philosophy

_____

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] We assume *arguendo* that the one incident alleged by Estep rises to the level of actionable
discrimination under Title IX. *But cf. Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806

Department that Dr. Allaire had "crossed the line" and later filed a formal complaint describing the incident with the University.

On appeal, Estep contends that she produced sufficient evidence to create a genuine issue of fact concerning the University's liability for Dr. Allaire's conduct. Both parties agree that in response to the University's motion for summary judgment, Estep needed to produce evidence showing: 1) that the University "knew that there was a substantial risk" that this harassment by Dr. Allaire would occur; and 2) that the University, when it knew of this risk or of the alleged harassment, failed to take "appropriate remedial action" under the circumstances. *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 652-53, 660-61 (5th Cir. 1997).

To show that the University knew that Dr. Allaire posed a substantial risk of sexually harassing a female doctoral candidate, Estep produced evidence that the chair of the Philosophy Department was aware of Dr. Allaire's reputation for being flirtatious and of a rumor that Dr. Allaire had been romantically interested in a graduate student in the 1980s.[2] We agree with the district court's conclusion that this summary judgment evidence fails to create a genuine issue of material fact as to whether the University knew that there was a substantial risk that Dr. Allaire would sexually harass a female doctoral candidate.

---

(5th Cir. 1996) (noting that single offensive utterance does not rise to the level of actionable discrimination under Title VII). Estep, however, lacks standing to pursue discrimination claims other than her own. *Lowrey v. Texas A&M Univ.*, 117 F.3d 242, 251 (5th Cir. 1997). We therefore decline to address her claims that the Philosophy Department discriminated against other female graduate students.

[2] Estep's remaining evidence is irrelevant: a withdrawn complaint of sexual harassment against Dr. Allaire made by a professor during the 1980s is not evidence of his likely behavior towards graduate students in 1994; a complaint of sexual harassment made by a graduate student after the alleged incident between Estep and Dr. Allaire is not evidence of notice; a sexual harassment complaint filed against professor Hankinson is not evidence of conduct attributable to Dr. Allaire.

Estep also claims on appeal that the University's investigation of her complaint was not an appropriate remedial action because "Professor Allaire [continued] to have daily contact with [her] in the Philosophy Department and continued to harass her" during the investigation.[3] The only support for this allegation, however, is Estep's assertion that Dr. Allaire once menacingly brushed against a newsletter that she was reading while she was standing in a hallway. We find that this alleged encounter in the Philosophy Department, even if true, does not call into question the appropriateness of the University's remedial efforts. Given that Dr. Allaire resigned as Estep's doctoral advisor immediately after the alleged incident and that Estep does not contend that she had any continued involvement with him in a classroom setting, the University's decision to investigate Estep's initial allegation before taking any additional action with respect to Dr. Allaire constituted appropriate remedial action under the specific circumstances of this case.

Estep also alleges in her complaint that the University retaliated against her for her role in initiating investigations of Dr. Allaire and of the purportedly discriminatory practices in the Philosophy Department. On appeal, Estep contends that she produced sufficient evidence of retaliation by showing that certain faculty members made derogatory comments about her and that a critique of a draft of her dissertation by her last doctoral advisor effectively discharged her from the doctoral program.

To withstand the University's motion for summary judgment on her retaliation claim, Estep needed to produce evidence showing, at a minimum, that the retaliatory acts were

---

[3] Estep also claims that the University discriminated against her by slowly investigating her allegations of discrimination. The district court properly granted summary judgment against Estep on this claim because the evidence shows that the delays were attributable to Estep's efforts to broaden the scope of the investigation.

analogous to "ultimate employment decisions." *See, e.g.*, *Lowrey*, 117 F.3d at 249 (recognizing a claim for retaliation under Title IX when the plaintiff alleged that she was denied a promotion and then demoted); *cf. Mattern v. Eastman Kodak Co.*, 104 F.3d 702; 707 (5th Cir. 1997) (noting that the acts of retaliation under Title VII must constitute "ultimate employment decisions.").[4] The unfavorable comments made by Philosophy Department faculty members, however, are not comparable to ultimate employment decisions. *Cf. Mattern*, 104 F.3d at 707 (holding that hostility from fellow employees does not rise to the level of the required retaliation). Further, although a constructive discharge from the doctoral program is tantamount to an ultimate employment decision,[5] Estep's evidence does not adequately support her contention that she was forced to withdraw from the doctoral program. To begin with, her doctoral advisor concluded his critique of her dissertation draft by stating that he believed "it was possible for [her] to write an acceptable dissertation." Moreover, there is no evidence showing that the faculty members making unfavorable comments about Estep were in a position to judge or otherwise exercise significant influence over the evaluation of her dissertation. Finally, there is no evidence suggesting that the critical comments made by Estep's advisor were understood by those within the Philosophy Department to foreshadow the futility of finishing her dissertation. We therefore hold that a reasonable doctoral candidate would not feel compelled to abandon her doctoral program under the circumstances demonstrated by Estep.

---

[4] We assume *arguendo* that Estep's evidence created genuine issues of fact regarding: 1) the existence of a causal relationship between the retaliatory acts and her complaints of discrimination; and 2) the University's responsibility for the retaliatory acts of its professors.

[5] Estep's constructive discharge claim is not pleaded in her complaint. Nevertheless, we address this claim because it was considered by the district court.

AFFIRMED.