Carolyn S. WATTS, Plaintiff–Appellant,

v.

The KROGER COMPANY; Arthur Bullington, Defendants,

The Kroger Company, Defendant–Appellee.

No. 97–60077.

United States Court of Appeals, Fifth Circuit.

Aug. 4, 1998.

---

Jim D. Waide, III, Victor Israel Fleitas, Waide & Chandler, Grant Moncrief Fox, Fox & Fox, Tupelo, MS, for Watts.

William T. Siler, Jr., Aubry Matt Pesnell, Phelps Dunbar, Jackson, MS, for Defendant–Appellees.

Barbara L. Sloan, Washington, DC, for Equal Employment Opportunity Commission, Amicus Curiae.

Before HIGGINBOTHAM and STEWART, Circuit Judges, and WALTER, * District Judge.

STEWART, Circuit Judge:

Carolyn Watts appeals the district court's grant of the Kroger Co.'s ("Kroger's") Motion for Summary Judgment as well as its partial grant of Kroger's Motion to Strike. Watts filed suit in district court alleging sexual harassment and retaliation against Kroger and Arthur Bullington, her supervisor, individually. Watts appeals the district court's decision, urging that there are genuine issues of material fact which merit a trial in the matter. Finding no error, we AFFIRM.

## I.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Carolyn Watts began her employment with the Kroger Co. ("Kroger") in February 1990 as a part-time employee in the flower shop of the company's Southaven, Mississippi grocery store. Sometime thereafter, she moved to the produce department where she continued to work on a part-time basis. Beginning in March 1994, Watts began working as a full-time produce clerk. Watts' supervisors in the produce department were John Moore, Glen Rice, and Arthur Bullington, respectively.

Watts claims that upon Bullington's arrival at the store in 1993, he subjected her to "an invidious campaign of sexual harassment." Specifically, Watts alleges that Bullington made inappropriate jokes both to and about her, continually made sexual innuendos to her, and that he once grabbed her buttocks as well as touched her on several other occasions.

Watts insists that Bullington's harassment intensified in the spring of 1994. She claims that Bullington began following her through the store calling her a "homewrecker" and saying that she was "homeless" in front of other employees, vendors and customers.[1] Bullington admits to making such comments.

In response to the increased harassment, Watts met with Kroger Store Manager Ricky Hayles to complain about Bullington on July 7, 1994. Watts was crying and was otherwise visibly upset during the meeting. She told Hayles that Bullington was making comments about her personal life and that she wanted the conduct stopped. Hayles allegedly spoke to Bullington that same day and told him to stop. Kroger claims that after this meeting, Bullington never again made any sexual comments to Watts and that Watts was never again subjected to any sexual advances.

Watts claims that though Hayles spoke to Bullington, Hayles did not notify the Human Resources Department about the situation. Watts suggests that within a week of her complaint to Hayles about Bullington, her work schedule was altered. She and Bulling-

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. These comments concern the fact that Watts was allegedly involved in an extramarital affair with Glen Rice—Watt's supervisor from 1990 to 1993, who Bullington replaced as Produce Manager. The "homeless" comment concerns the fact that in May 1994, Watts allegedly moved out of her home and left her husband and children for a period of time.

ton had arranged her schedule to allow Watts to work a second job at Federal Express. Watts claims that her schedule was altered to such an extent that she was forced to give up her position at Federal Express.

On July 19, 1994, Watts filed a union grievance alleging sexual harassment. She insists that the store manager was immediately provided a copy of the grievance and understood that human resources would have known about her allegations. Still, Humbles claims not to remember whether he was notified of the grievance promptly. He appears not to have begun an investigation into such matter until at least September 1994. Kroger investigated the complaint, but determined that Watts had not substantiated her claim of sexual harassment. Despite this finding, Kroger verbally reprimanded defendant Bullington and offered to transfer him or Watts to another store. Kroger also offered to transfer the plaintiff to another department within the Southaven store. Watts filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on November 2, 1994 alleging that Bullington sexually harassed her by subjecting her to a hostile work environment. In addition, she claimed Bullington and Kroger management retaliated against her in violation of Title VII. Watts then filed suit in federal court making those same allegations along with claims under state law.

## II.

### KROGER'S MOTION TO STRIKE

We first address Watt's challenge that the district court erred in granting Kroger's Motion to Strike several unsworn statements submitted by Watts. Watts attached to her Motion in Opposition to Summary Judgment several handwritten statements that she had collected from her co-workers. The statements were signed, but were not sworn, notarized, or in the form of affidavits. The district court held that the statements were not competent summary judgment evidence for the purposes of Fed.R.Civ.P. 56(e), and that the statements did not comply with federal requirements for unsworn declarations.

The district court relied on the decision in *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187 (5th Cir.1991) to reject the statements Watts presented. In Duplantis, this court noted "that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence." *Id.* at 191. Watts argues that if the touchstone for consideration is the ultimate admissibility of the evidence, the district court erred by not considering the statements at all. Offering no support from the Federal Rules of Evidence or relevant case law, she suggests that the documents were authenticated through her affidavit and properly relate admissions made by Bullington and others. She further argues that to ignore such evidence would amount to a "grave injustice" on the part of this court.

■ This court reviews the district court's decision to strike lay opinion testimony under an abuse of discretion standard. *Pedraza v. Jones,* 71 F.3d 194, 197 (5th Cir. 1995). We hold that the district court did not abuse its discretion in striking the statements. Because the statements were unsworn and were not presented to the court in a form required by Rule 56 we cannot say that the district court acted outside of its boundaries. Though Watt's argument that such a conclusion elevates form over substance may be intellectually compelling, it is of no practical merit to this court. Rule 56 clearly prescribes the manner in which such documents must be presented to the court. Without support for her argument that the statements are nonetheless admissible, we find Watts' contention groundless.

## III.

### ACTUAL AND CONSTRUCTIVE NOTICE OF SEXUAL HARASSMENT

Noting at the outset that a district court's grant of a summary judgment motion is reviewed de novo, *Hirras v. National R.R. Passenger Corp.,* 95 F.3d 396, 399 (5th Cir. 1996), we now turn to the remainder of Watts' claims.

Watts first challenges the district court's finding that she failed to produce evidence that Kroger had actual notice of Bullington's alleged harassment prior to July 19, 1997—

the date that she made a formal sexual harassment complaint to her union. Watts suggests that Kroger received actual notice of the alleged harassment from two people. First, Watts argues that in her opposition to summary judgment, she offered a statement from a coworker, Patricia Rippee, which indicated that on two occasions prior to July 7, 1994, Rippee informed Hayles of the verbal abuse and harassment directed by Bullington towards Watts. Second, Watts argues that "[i]t is undisputed that Bullington was Mrs. Watts' immediate supervisor and exercised control over the conditions of her employment." She concludes that as such, Bullington's knowledge of his own harassing conduct can be imputed to Kroger. The district court found that no genuine issue of material fact existed as to Kroger's actual notice because Watts had failed to produce any admissible evidence of actual notice of harassment by Watts to Kroger.

This court has held that:

> To maintain a workplace sexual harassment claim, the claimant must show that (1) she belongs to a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment (i.e., that the harassment was sufficiently pervasive or severe to create an abusive work environment); and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Hirras,* 95 F.3d at 399 (citing *Jones v. Flagship Int'l,* 793 F.2d 714, 719–20 (5th Cir. 1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987)). Watts' argument focuses on the fifth essential element of the claim.

■ With respect to Rippee's unsworn statement, we find that it is not competent summary judgment evidence and cannot be used to create a genuine issue of material fact. Thus, we hold that the district court properly refused to consider it. In response to Watt's argument that Bullington's knowledge of his own harassing conduct can be imputed to Kroger, we find that Watts has waived this argument because she did not present it to the district court. In *Nissho–Iwai Co., Ltd. v. Occidental Crude Sales, Inc.,* 729 F.2d 1530, 1549 (5th Cir.1984), this court held that an issue raised for the first time on appeal should only be considered if: (1) it involves a purely legal question, and the failure to consider the issue would result in a miscarriage of justice. The *Nissho–Iwai* court held that if an argument would have involved factual issues if raised at trial, the court should decline to address the contention on appeal. *Id.* Because an imputed knowledge determination would turn upon whether Bullington was Kroger's agent for Title VII purposes, we conclude that it is necessarily a factual determination which should have been made before the trial court.

Watts also argues that Kroger had constructive notice of sexual harassment because the harassment was so pervasive. This court has held that liability may be imposed upon an employer for the discriminatory acts of an employee only if the employer knew or should have known of the employee's offensive conduct and failed to take prompt remedial action. *Nash v. Electrospace Sys., Inc.,* 9 F.3d 401, 404 (5th Cir.1993). The district court concluded that the alleged harassment was not pervasive and that the competent summary judgment evidence presented to the court indicated that no one in a position of authority (other than Bullington himself) had any knowledge of the alleged sexual harassment prior to July 7, 1994. The district court therefore determined that there was no admissible evidence by which a reasonable juror could conclude that Kroger knew or should have known of the alleged harassment before July 7, 1994.

Watts invites us to look to our decision in *Farpella–Crosby v. Horizon Health Care,* 97 F.3d 803 (5th Cir.1996) for guidance in our analysis of her claim. In *Farpella–Crosby,* this court held that relevant to a determination of whether an employer has constructive knowledge of harassment is whether the conduct "took place in public, under the eye of co-workers and supervisors." *Id.* at 807 n. 5 (quoting *Nash,* 9 F.3d at 404). Watts insists that the evidence before the district court demonstrated that Bullington indeed harassed Watts in the presence of Kroger

employees, vendors and customers. She maintains that: (1) Bullington called Watts a homewrecker as he followed her around the store; (2) Bullington made jokes to Watts' co-workers about "eating her pie" and having "some meat" for her; and (3) co-workers confirmed that Bullington asked Watts to "check [him], please" (meaning that he wanted Watts to touch his penis). Watts thus insists that there is a genuine issue of material fact regarding whether Kroger had constructive knowledge of Bullington's alleged harassment.

■ Our review of the record reveals that no reasonable juror could conclude that Kroger knew or should have known of the alleged harassment prior to July 7, 1994. Most of the allegedly harassing comments to which Watts' referred are supported only by her own affidavit which claims that Bullington made such comments to her. The only record evidence of allegedly harassing conduct that took place in public is Bullington's comments to Watts about being a homewrecker and homeless. We find, and Watts concedes, that such comments were not sexual in nature. Sex-neutral hostile conduct cannot be used to support a hostile environment claim. Title VII does not protect employees from hostile conduct that is not based on their protected status. *Farpella–Crosby*, 97 F.3d at 806, n. 2.

## IV

### PROMPT REMEDIAL ACTION

Watts suggests that the district court erred in holding that Kroger took prompt remedial action in response to the alleged harassment after it received Watts' complaint on July 7, 1994. She also argues that Kroger's investigation and subsequent reprimand of Bullington was insufficient to insulate it from liability for hostile work environment sexual harassment. Specifically, she contends that Kroger's investigation was not conducted promptly, nor was its reprimand of Bullington sufficiently severe.

■ While conceding that Kroger did take action against Bullington in response to her complaint, Watts maintains that such action was not harsh enough, and therefore was not remedial in nature. The record indicates that in response to Watts' July 7, 1994 complaint, Hayles spoke to Bullington regarding his alleged actions toward Watts. The record further demonstrates that Watts was never again subjected to any conduct which she considered to be sexual in nature and Bullington never made any further comments of a sexual nature to her. Watts admits that this is correct. We therefore find that Kroger took prompt remedial action to remedy the situation.

■ We have held that prompt remedial action in responding to a hostile work environment claim protects employers from liability for the sexually harassing conduct. *Waymire v. Harris County*, 86 F.3d 424, 428 (5th Cir.1996). Watts' argument that the remedial measures were not severe enough is unpersuasive. "[T]he effectiveness of the remedial steps is not measured by the extent to which the employer disciplines or punished the alleged harasser ... [but] corrective steps are effective if they stop the alleged harassment." *Maher v. Associated Services for the Blind*, 929 F.Supp. 809 (E.D.Pa.1996), *aff'd* 107 F.3d 862 (3d Cir.1997); *see also Waymire*, 86 F.3d at 429 ("Title VII does not require that the employer use the most serious sanction available to punish an offender, particularly where, as here, this was the first documented offense by [the] individual employee."). That no other, more severe action was taken against Bullington does not defeat the prompt remedial steps that Kroger took in addressing Watts' complaint. When an employer discovers that sexual harassment may have occurred, the employer's remedial action must include appropriate corrective action; that is, the employer must do whatever is necessary to end the harassment and prevent the misconduct from recurring. *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309 (5th Cir.1987).

A review of the record also reveals that once Watts made a complaint alleging sexual harassment on July 19, 1994, Kroger also took prompt remedial action. Watts made this complaint in the form of a union grievance. In response, Kroger Human Resources Manger, Mike Humbles set up a

meeting with the union representative and Watts. At that meeting Humbles listened to Watts' complaints. He subsequently conducted an investigation of Watts' sexual harassment allegations which included interviews of other Kroger employees. At the termination of the investigation, Humbles was able to independently verify only that Bullington called Watts homeless and a homewrecker. While Humbles found such comments to be inappropriate and unprofessional, he determined that they did not constitute sexual harassment. Still, Humbles offered to transfer either Bullington or Watts to another store, but both refused to be transferred.

Because the record illustrates that Kroger took prompt action to ensure that Watts' concerns were addressed, we find no error by the district court in dismissing Watts' sexual harassment claims.

## V

### RETALIATION CLAIM

Lastly, we consider the district court's dismissal of Watts' retaliation claim. Watts argues that the district court erred when it held that she did not engage in activity protected by Title VII until July 19, 1994. Watts insists that her informal complaints to Bullington about his alleged harassment prior to her meeting with Hayles on July 7, 1994 amounted to protected activity. She further maintains that her July 7, 1994 complaint constituted protected activity. Finally, she argues that Bullington's knowledge of her complaints to him should be imputed to Kroger.

■ For the first time on appeal, Watts argues that her complaints to Bullington prior to July 7, 1994 constituted actions protected by Title VII. Because Watts did not raise this argument in opposition to Kroger's Motion for Summary Judgment, the issue is not properly before us now. *Tel–Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1142 n. 8 (5th Cir.1992). As for her July 7, 1994 complaint to Hayles, we find that it did not constitute protected activity pursuant to Title VII. Watts herself admits that in her July 7, 1994 complaint, she did not report

any sexual harassment and that she did not make any such allegation prior to July 19, 1994. Because the record confirms this fact, the district court was correct in holding that no reasonable juror could find that she was engaged in protected activity prior to July 19, 1994.

Watts argues that the district court erred in holding that the alleged actions about which she complained did not rise to the level of adverse employment actions. She suggests that following her July 7, 1994 meeting with Hayles, she was subjected to retaliation. Specifically, she brings to our attention the fact that Bullington changed her work schedule and asked her to perform tasks which she had not previously been asked to perform. She avers that she need not suffer an ultimate employment decision to state a claim for retaliation under Title VII.

■ The district court was correct in its determination that Watts' allegations do not rise to the level of an adverse employment action. *Mattern v. Eastman Kodak Co., et al.*, 104 F.3d 702 (5th Cir.1997). In *Mattern*, we held that "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon these ultimate decisions." *Id.* at 707. In explaining that the actions Watts complained of did not constitute adverse employment actions, the district court in the instant matter properly defined such acts as including " 'hiring, granting leave, discharging, promoting, and compensating.' " *Id.* (internal quotation omitted).

Watts concedes that neither the change in her schedule nor the new tasks which she was given affected her pay. We have held, along with many of our sister circuits, that employment actions are not adverse where pay, benefits, and level of responsibility remain the same. *Id.* at 708–10. Thus, our circuit law forecloses Watts' arguments that changes to her job assignments and other alleged acts by Bullington rose to the level of adverse employment decisions.

■ The district court properly focused on an important defect in Watts' retaliation claim: the lack of evidence on the causation

element. At the time Kroger allegedly began retaliating against Watts, Kroger did not know Watts had engaged in any protected activity. The district court correctly held that Kroger could not retaliate against Watts for making sexual harassment complaints, because it did not know she had engaged in protected activity. *Long v. Eastfield College,* 88 F.3d 300, 305 n. 4 (5th Cir.1996). The record bears out that Watts' schedule was changed for the first time on July 17, 1994. She concedes that she did not complain of any alleged sexual harassment until July 19, 1994. Watts' speculation that the such action constituted retaliatory conduct is not sufficient to rebut Kroger's proffered non-discriminatory reason for changing her schedule.

## VI

### CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of Kroger's Motion for Summary Judgment.