# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 1, 2021

Lyle W. Cayce
Clerk

No. 20-30640

Kristina Sansone,

*Plaintiff—Appellant*,

*versus*

Jazz Casino Company, LLC
D/B/A Harrah's Casino,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-14093

Before Dennis and Engelhardt, *Circuit Judges*, and Hicks\*, *District Judge*.

Per Curiam:\*

Plaintiff Kristina Sansone ("Sansone") appeals a grant of summary judgment in favor of her former employer, Defendant Jazz Casino Company,

---

\* Chief Judge of the Western District of Louisiana, sitting by designation.

\* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30640

LLC d/b/a Harrah's Casino ("Harrah's"). We find that summary judgment was proper on Sansone's Title VII retaliation and ADA discrimination claims, but genuine disputes of material fact remain as to her hostile work environment claim.

I.

Beginning in September 2017, a Harrah's customer began frequenting Sansone's baccarat table and making sexually charged gestures, remarks about her appearance, and sexual propositions towards her. According to Sansone, the customer engaged in this harassing behavior at least twice a week until her termination on December 31, 2017. *Id.* Although Sansone claims she verbally reported the customer to her floor supervisors several times throughout this three-month period, a formal written report was not made until December 22. Sansone was permitted to leave work early that day and stay home the following day. She was also advised to inform her supervisors if the customer returned, and when he did on December 25, Sansone was removed from her table and once again permitted to leave early. The customer never reappeared at Sansone's table and surveillance footage was unable to identify him. *Id.*

Meanwhile, on December 24 a time discrepancy arose when Sansone failed to properly clock-in for work. Sansone's response to a Human Resources audit payroll email stated she "worked 11-7 that day, I honestly think I walked in a min before not sure though… but no later than 11 i believe." Surveillance footage revealed Sansone entering work at 11:10 AM and not attempting to clock-in. Sansone was found to be in violation of five Harrah's employee rules pertaining to honesty, clock in/out procedures, and curiously, for improper use of a public entrance despite having permission to use this handicapped amenity due to a foot injury. *Id.* Sansone was terminated on December 31 for alleged misrepresentation of hours worked. *Id.*

No. 20-30640

Sansone's lawsuit claims Title VII retaliation, a hostile work environment, disability discrimination, and related state law violations. In granting summary judgment and dismissing all claims, the district court issued a brief order stating Sansone failed to establish genuine disputes of material fact that her termination resulted from anything other than her own misrepresentations and with respect to her hostile work environment claim.[1] We review a district court's grant of summary judgment *de novo*. *See Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 259-60 (5th Cir. 2003). After such review, we AFFIRM the district court's dismissal of Sansone's Title VII retaliation and ADA discrimination claims. However, we find genuine disputes of material fact remain as to Sansone's hostile work environment allegation, and accordingly REVERSE and REMAND this claim alongside any related state law claims or arguments.

## II.

To establish a prima facie case of retaliation, the plaintiff must establish: (1) she participated in an activity protected by Title VII, (2) her employer took an adverse employment action against her, and (3) a causal connection exists between the protected activity and the adverse employment action. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for its employment action. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222

---

[1] Absent from the district court's order is any analysis or reasoning supporting its decision. While a district court need not make explicit findings of fact and conclusions of law when appellate review is *de novo*, such findings and conclusions are often quite helpful. *See Thomas v. N.A. Chase Manhattan Bank*, 994 F.2d 236, 241 n. 6 (5th Cir. 1993) (citing *Boazman v. Econ. Lab, Inc.*, 537 F.2d 210, 213 n. 5 (5th Cir. 1976)). Particularly when summary judgment is granted and a case is dismissed, we urge the district court to adequately explain its decision. *See id.*

(5th Cir. 2000). If a lawful reason is produced, the burden shifts back to the plaintiff to demonstrate the proffered reason is a pretext for the real retaliatory purpose. *See id.*

Sansone argues a prima facie showing was present because (1) her firing supervisor had given a deposition in another sexual harassment suit just weeks prior to her termination, (2) her citation for using an approved handicapped entrance was illogical, and (3) the language she used in her email to Human Resources did not amount to a true falsification. First, the firing supervisor's deposition in an entirely unrelated matter is conclusory in nature and cannot be relied upon as summary judgment evidence. Second, the record evidence clearly indicates that Sansone was terminated for misrepresenting her hours rather than for use of a public entrance. While her termination letter does cite Sansone for failing to enter work through a proper employee access point, the deposition testimony of Sansone's supervisors and key Harrah's decisionmakers revealed her misrepresentation informed their firing decision. Third, the precise language used by Sansone is irrelevant, as it requires the Court to question the wisdom of Harrah's business decision. *See LeMaire v. La. Dep't of Transp. and Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Our job… is not to engage in second-guessing of an employer's business decisions. Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones."); *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("even an incorrect belief that an employee's performance is inadequate" is a legitimate reason).

Finally, Sansone's briefing to this Court emphasizes the temporal proximity between her report of harassment and her termination. However, timing allegations standing alone cannot defeat summary judgment and do not relieve the plaintiff of rebutting an employer's lawful reason for termination. *See Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th

Cir. 2007); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

Even assuming *arguendo* that Sansone did make a prima facie showing of causation and a Title VII retaliation claim overall, she failed to rebut the nonretaliatory reason produced by Harrah's for her termination. In order to demonstrate pretext, Sansone must show "both that the reason was false, *and* that discrimination was the real reason." *Walton v. Bisco Indus.*, 119 F.3d 368, 370 (5th Cir. 1997) (emphasis in original). Harrah's production of employment records of other employees fired for misrepresenting hours, coupled with Sansone's failure to provide competent summary judgment evidence that the true motive was retaliation, forecloses this claim.

## III.

For similar reasons, Sansone failed to establish a genuine dispute of material fact for her ADA discrimination claim. A prima facie disability discrimination claim requires the plaintiff to prove: (1) she had a disability, (2) she was qualified for the job she held, and (3) she was subject to an adverse employment decision because of her disability. *See Clark v. Boyd Tunica, Inc.*, 665 F. App'x 367, 370 (5th Cir. 2016). ADA and Title VII claims relying on circumstantial evidence follow the same burden-shifting framework. *See Adeleke v. Dall. Area Rapid Transit*, 487 F. App'x 901, 903 (5th Cir. 2012).

Again, while Sansone's termination letter does cite her use of a handicapped public entrance as prohibited conduct, the evidence makes clear she was terminated not for this action, but for misrepresenting her hours worked. Bolstering this conclusion, throughout Sansone's employment she was accommodated multiple times in light of a cancer diagnosis and other injuries. To accommodate Sansone's foot injury, Harrah's moved Sansone to baccarat—the only table game at Harrah's where the dealer sits—and permitted her to park in a handicapped lot and use an entrance with a ramp.

The evidence demonstrates Sansone's disability was not the reason for her firing.

## IV.

In order to establish a hostile work environment claim, the plaintiff must demonstrate: (1) she is a member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. *See Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). Here, only the fourth and fifth elements are in dispute.

## A.

To affect a term, condition, or privilege of employment, sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009). This depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harvill v. Westward Commc'n, LLC*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Importantly, the severe or pervasive standard is stated in the disjunctive, as a plaintiff need not demonstrate both are present. *See id.* at 434-35 (collecting cases). It follows logically that the required showing of severity varies inversely with the pervasiveness of the conduct. *See Lauderdale v. Tex. Dep't of Crim. Just., Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007).

The highly fact-intensive nature of these types of cases is reflected in our jurisprudence on the subject, and the parties have engaged in the time-honored tradition of citing to and distinguishing these cases, attempting to place this matter on their preferred side of the spectrum between dismissal and viability. Ultimately, we side with the latter. To survive summary judgment, Sansone need not make it clear that she "was subject to actionable harassment; she of course only needs to show that a jury could reach that conclusion based on its view of the evidence." *See Gardner v. CLC of Pascagoula, LLC*, 915 F.3d 320, 325 (5th Cir. 2019). We feel she has done so.

In terms of both seriousness and frequency, the harassment experienced by Sansone is analogous to the plaintiff in *Farpella-Crosby*, where we held a hostile work environment was present. *See Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996). There, a supervisor made comments two to three times per week attributing an employee's large number of children to a proclivity for sexual activity. *See id*. at 805. The supervisor also joked at an office baby shower about the employee's refusal to use condoms, and on one occasion, entered a room and complained of a "smell of fish." *Id*. Lastly, the supervisor directly inquired about the employee's sex life, frequently asking where her and a coworker had been the night before and whether they had "got any." *Id*.

The unidentified Harrah's customer frequently asked Sansone about her sex life and expressed his desire to sleep with her. He commented on her breasts and physical appearance and directed sexual gestures towards her. *Id*. His comments were made in the presence of others and occurred at least two times a week for a significant period of time. *Id*. This contrasts with instances where we have held a smaller stint within a lengthy period of employment was not sufficiently pervasive to support a hostile work environment claim. *See Peterson v. Linear Controls, Inc.*, 757 F.Appx. 370, 374 (5th Cir. 2019) (no hostile work environment where the plaintiff worked for defendant for six

years, but allegations concerned only one ten-day period). Drawing all inferences in favor of Sansone, as the district court was required to do at this stage, the fourth element of a prima facie hostile work environment claim was met.

## B.

Turning to the fifth and final element, this Court has long recognized that in order to demonstrate an employer has failed to take prompt remedial action, the employee must first show that she took "advantage of [the] corrective opportunities provided by the employer." *May v. FedEx Freight E., Inc.*, 374 F. App'x 510, 512 (5th Cir. 2010) (citing *Harvill*, 433 F.3d at 437). Relatedly, employers may raise an affirmative defense to a hostile work environment claim when (1) the employer exercised reasonable care to prevent and promptly correct any harassing behavior, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided to avoid harm. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

Significant factual disputes remain regarding whether Sansone's initial verbal complaints to her floor supervisors should have triggered a response from Harrah's. At this stage, these unanswered questions preclude a summary judgment finding that Harrah's took prompt remedial action, and likewise, prohibit the successful raising of an affirmative defense.

According to Sansone, she was trained to report problems to her floor supervisors who would then move any complaints up the chain of command. She claims she followed this prescribed procedure multiple times throughout the relevant three-month period, but her concerns were never addressed. Instead, she was instructed to "ignore him" and "let it go," with the additional response that "this comes with the business." *Id.* It remains unclear whether the term "harassment" was used in these verbal complaints,

as one supervisor stated she only described the customer's behavior as aggravating. Harrah's position is that Sansone failed to take advantage of its Anti-Harassment Policy because she did not file a complaint with Human Resources or upper-level management. Once this did take place on December 22, Harrah's acted immediately to address the problem, sending Sansone home and attempting to identify the customer when he reappeared at the casino days later.

Viewing the evidence in the light most favorable to Sansone, she complained about the harassment to her supervisors as early as September, but these supervisors failed to take any action. Nothing was done to identify the customer or remedy the situation until a formal complaint was filed months after Sansone's initial complaints. The remaining factual disputes on whether Sansone properly activated the chain of command and whether Harrah's responded appropriately require us to REVERSE and REMAND this claim for further proceedings. Any state law claims asserted by Sansone related to her hostile work environment allegations must also be revived and reviewed.

## V.

For the aforementioned reasons, we AFFIRM the judgment of the district court with respect to Sansone's Title VII retaliation and ADA discrimination claims, as well as any state law claims relating to retaliation and disability discrimination. However, we REVERSE the dismissal of her hostile work environment claim and any corresponding state law claims and REMAND for further proceedings.