Nancy MATHIS, M.D. and Gary Mathis, Appellants,

v.

James R. BOCELL, M.D. and the Estate of Thomas Cain, M.D., Appellees.

No. 01–96–00885–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 30, 1998.

Rehearing Overruled July 30, 1998.

Denice Smith, Houston, for appellants.

Fred L. Shuchart, Brownsville, for appellees.

Before HEDGES, NUCHIA and SMITH, JJ.[1]

## OPINION

HEDGES, Justice.

In this medical malpractice case, Nancy Mathis, M.D. and Gary Mathis ("plaintiffs") appeal from a summary judgment granted in favor of appellees, James R. Bocell, M.D. and Thomas Cain, M.D. In their sole point of error, Nancy and Gary Mathis complain that (1) the summary judgment evidence did not establish the absence of material fact issues and (2) the affidavits of Drs. Bocell and Cain were legally insufficient to support a summary judgment. We reverse and remand.

## BACKGROUND

On September 14, 1992, Dr. David Lintner performed an arthroscopy of the lateral meniscus of Nancy Mathis' right knee. According to Lintner's operative report, which was attached to plaintiffs' response to Cain's motion for summary judgment, Lintner placed three ethibond sutures over Mathis' meniscal tear. Four days later, Mathis went to Methodist Hospital because of the painful swelling in her knee. At the request of the physician who was on call for Lintner, Bocell examined Mathis. After examining Mathis and aspirating her knee, Bocell noted that Mathis' temperature was over 102 degrees and her white blood cell count was elevated. At that point, Mathis underwent an arthroscopy with irrigation and debridement. Cultures taken at that time were positive for staph aureus. Mathis was treated with antibiotics.

On October 1, 1992, Mathis returned to Bocell's office, where he removed her sutures. Bocell noted normal post-operative swelling. Mathis went to Bocell's office several more times during the remainder of 1992. By February 1993, Mathis had discontinued taking parenteral antibiotics and had begun taking oral antibiotics. On February 9, 1993, Bocell aspirated her knee. A culture taken at that time revealed no organisms. One week later, Mathis returned to Bocell's office and told him that her knee remained swollen to a certain degree in spite of the antibiotics. Mathis' laboratory results did not reveal any cultures.

On March 5, 1993, Bocell performed an arthroscopic examination with joint debridement and explored the lateral incision on Mathis' knee. Bocell did not "visualize" any sutures while exploring the incision. Bocell examined the inside of her knee for any foreign material as a possible nidus for infection. According to Bocell, the tissues were in good condition, and there were no signs of sutures. Over the next several months, Mathis took antibiotics and paid Bocell several visits.

On July 26, 1993, Cain examined Mathis, who complained of recurrent "flare-ups" of her knee whenever she decreased the usage of antibiotics. Cain noted that following Mathis' initial surgery, she had "apparently developed an infection." After examining Mathis, Cain had the impression that Mathis was suffering from "chronic synovitis of the right knee, possibly secondary to chronic sepsis." Cain advised her that she might need an arthroscopy so that he could assess the intra-articular status of her surfaces and remove any ethibond sutures in her knee. On August 6, 1993, Cain performed the arthroscopy. In his operative report, Cain noted that he removed two retained ethibond sutures from the repair site and sent them for biopsy and culture. In his affidavit, Cain noted that a section removed from Mathis'

1. The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

lateral meniscus showed an old suture with large areas of dense fibrous tissue but without any inflammation. This suture was submitted to the pathology lab. The pathology report indicated focal areas with slightly increased numbers of chronic inflammatory cells, but no acute inflammation. In addition, no organisms were found in the specimens. After this procedure, Mathis took parenteral antibiotics by central line.

In November 1993, Dr. Richard Buch performed an arthroscopy during which he removed two sutures from the area of Nancy Mathis' posterior meniscus.

## PROCEDURAL HISTORY

In their original petition, Nancy and Gary Mathis sued Bocell alleging that Bocell failed to (1) properly diagnose, manage, and treat Nancy's post-operative infection and knee, (2) timely perform a subsequent irrigation and debridement of her knee in face of her recurring infection, and (3) use reasonable skill, care, and diligence to correctly perform a thorough irrigation and debridement of her knee in March 1993. Bocell moved for summary judgment arguing that nothing he did fell below the standard of care so as to cause or contribute to the damages of which plaintiffs complained. In support of his motion for summary judgment, Bocell attached his own affidavit.

Plaintiffs filed a response arguing that genuine issues of fact exist as to whether Bocell was negligent and whether that negligence caused Nancy Mathis' injury. Plaintiffs attached the affidavit of their expert, Dr. Julio V. Westerband, to controvert the facts stated in Bocell's affidavit. In his reply to plaintiffs' response, Bocell argued that Westerband's affidavit was fatally defective because plaintiffs did not attach the medical records upon which Westerband relied in forming his opinion. In response, plaintiffs filed a motion for leave to supplement Westerband's affidavit with those medical records. The record does not indicate whether the trial court ruled on this motion. The trial court granted Bocell's motion for summary judgment but did not rule on Bocell's objection to Westerband's affidavit.

While Bocell's motion for summary judgment was pending, plaintiffs amended their petition, adding Cain as a defendant. Plaintiffs' amended petition alleged—among other things—that (1) Cain failed to use reasonable skill, care, and diligence to correctly perform a thorough irrigation and debridement of Nancy Mathis' knee in August 1993 by failing to remove the non absorbable sutures in her knee; (2) Bocell and Cain failed to determine the type and number of sutures used in the original surgery; and (3) Bocell and Cain failed to associate the presence of non-absorbable sutures used in the meniscal repair as a nidus of Nancy Mathis' continuing post-operative infection.

Cain moved for summary judgment arguing that he did not breach the relevant standard of care. In support of his motion for summary judgment, Cain attached his own affidavit. In their response to that motion for summary judgment, plaintiffs argued that (1) Cain's affidavit did not detail the standards of reasonably prudent orthopedic care and treatment for patients like Nancy Mathis; (2) Cain's affidavit did not detail how he met the standards of reasonably prudent orthopedic care; (3) Cain's affidavit was based on medical records not attached as summary judgment proof; (4) Cain's affidavit was conclusory; (5) genuine issues of material fact existed on negligence and causation because of inconsistencies between Cain's affidavit and the medical records; and (6) Westerband's affidavit, which was attached to the response along with the medical records he relied upon in forming his opinion, created genuine fact issues regarding whether Cain breached the standard of care and whether that breach caused her injuries. In his reply, Cain argued that Westerband's affidavit lacked credibility and did not raise a fact issue because Westerband never reviewed Cain's records.

The trial court granted Cain's motion for summary judgment, overruled plaintiffs' procedural and evidentiary objections to Cain's motion for summary judgment, and granted Cain's objections to the conclusory nature of Westerband's affidavit.

## STANDARD OF REVIEW

In reviewing a summary judgment, we must take all evidence favorable to the non-movant as true and grant every reasonable inference in favor of the nonmoving party. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (1985). If differing inferences may reasonably be drawn from the summary judgment evidence, a summary judgment should not be granted. *Id.* at 549. The movant's own evidence may establish the existence of a genuine issue of material fact on the plaintiff's claim. *Armbruster v. Memorial Southwest Hosp.*, 857 S.W.2d 938, 941 (Tex.App.—Houston [1st Dist.] 1993, no writ).

 The elements of a medical negligence claim are: (1) a duty to conform to a certain standard of care; (2) a failure to conform to the required standard; (3) actual injury; and (4) a reasonably close causal connection between the conduct and the injury. *Armbruster*, 857 S.W.2d at 940. A defendant seeking a summary judgment must prove conclusively that the plaintiff cannot prevail. *Griffin v. Rowden*, 654 S.W.2d 435, 435–36 (Tex.1983); *Armbruster*, 857 S.W.2d at 940. This may be accomplished by proving at least one element of the claim conclusively against the plaintiff. *Gray v. Bertrand*, 723 S.W.2d 957, 958 (Tex. 1987); *Armbruster*, 857 S.W.2d at 940–41. If the movant negates an element of the plaintiff's claim, the plaintiff must produce controverting evidence raising a fact issue on the element or elements negated. *Armbruster*, 857 S.W.2d at 941. The plaintiff must prove by competent medical evidence either that the defendant did something other health care providers using ordinary care would not have done or that it failed to do something they would have done under the same circumstances. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 366 (Tex.1987); *Armbruster*, 857 S.W.2d at 941.

## SUMMARY JUDGMENT FOR THE APPELLEES

 The threshold question in a medical malpractice case is the standard of care, which must be established so the fact finder can determine if the defendant deviated from it. *Armbruster*, 857 S.W.2d at 941. In such cases, the court must be guided solely by an expert's opinion. *Id.* A summary judgment may be based on an expert's uncontroverted testimony if the testimony is clear, positive, direct, otherwise credible, free from inconsistencies, and capable of being readily controverted. Tex.R. Civ. P. 166a(c). The affidavit of an interested expert who is also a party to the case can support summary judgment if it meets these requirements. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991). However, an expert cannot merely state that he knows the standard of care and conclude that it was met. *Armbruster*, 857 S.W.2d at 941.

### *Dr. Bocell*

In addition to setting out his credentials and qualifications in orthopedic surgery, Bocell's affidavit stated, in relevant part:

> Nancy B. Mathis was first seen by me on September 18, 1992, at the Methodist Hospital Emergency Room. Prior to my first encounter with Dr. Mathis she had undergone arthroscopic lateral meniscus repair by my colleague, Dr. David Lintner, and she had subsequently developed a painful swelling with a mild temperature elevation. Ms. Mathis was seen by me at the request of the physician on call for Dr. Lintner. After examination and aspiration was performed, the aspiration revealed multiple white cells without any bacteria, however, her fever had reached over 102 degrees. It was also determined that her white count was elevated to 11,000. At that point I recommended that she undergo surgical irrigation and debridement. This procedure was performed arthroscopically on the day of admission. Cultures taken at that time were positive for staph aureus. She was placed on antibiotics under the direction of the Infectious Disease Service.

> . . . .

> She returned on October 29, 1992, and was doing well at that time showing only very mild effusion with a healed wound, and an excellent range of motion. At that time she was continuing on a course of antibiotics under the direction of the Infectious Disease Service.

She was seen again on January 6, 1993, and was doing well again at that time with little swelling and had no fever. It was noted on that occasion that she had two more weeks of parenteral antibiotics, and after that time was to be placed on oral antibiotics.

On February 17, 1993, she returned to the office and stated that as long as she kept her Cloxacillin dose high, her knee did not swell, though it always remained swollen to a certain degree. On examination, there was moderate swelling with no redness. Her laboratory studies at that time revealed only a 4,800 white cell count with no growth on any of her cultures. My recommendation at that time was an operative arthroscopy with exploration of the lateral incision and removal of any sutures which might be visualized. This course was also discussed with the infectious disease service.

On March 5, 1993, Dr. Mathis underwent reexamination arthroscopically with joint debridement and exploration of the lateral incision. No sutures were visualized while re-exploring the incision surgically. The knee was observed on the inside to evaluate the possibility any foreign material as a possible nidus for the infection. My examination arthroscopically revealed that the tissues were in good condition, there were no signs of sutures and **it would have been an inappropriate course of action to have removed the good tissue visualized.**

. . . . .

Throughout my treatment of Ms. Mathis, following irrigation and the debridement procedure in September, 1992, diagnostic testing conducted by me revealed no infection of the soft tissue. Her infection was purely confined to the intraarticular area, and during the two arthroscopic procedures, which I performed, no suture material was visible. **Under those circumstances, it would not have been within the standard of care for a surgeon to remove normal meniscus in order to get down to underlying sutures with no signs of infection, redness or irritation in the tissue.** The cultures and gram stains at the time that the second arthroscopy performed by me were the same as those in the office when her swollen knee was aspirated (that is that the gram stain was negative and that the cultures indicated that there was no growth). Based upon the results of both prior to and at the time of the second arthroscopic procedure, it is apparent that there was *no active infective process present in the knee.*

As a board certified orthopedic surgeon, I am familiar with the standard of care involved in arthropedic surgery, pre-operative assessment of patients, and the technical aspects of orthopedic surgery, postoperative care, recognition, and treatment of complications.

I am familiar with the community standards of care involved at the performance involved with the orthopedic surgery, specifically arthropedic surgery, and the standard of care involved in performing arthroscopic surgery in utilization to determine the existence of any infectious process. There is no evidence as demonstrated by the arthroscopic procedures and the repeated culture and gram stains that there was any infectious process in Dr. Mathis' knee relating to the presence of sutures during the time of my treatment of Dr. Mathis.

I am familiar with the community standards of care involved in orthopedic surgery and arthroscopic surgery, and it is my opinion that those minimum standards were not only met, but were exceeded in the care given to Dr. Mathis by me. Based upon reasonable medical probability, it is my opinion that no negligent acts of omission or commission produced the complaints allegedly experienced by Dr. Mathis or the damages which she alleges.

**The standard of medical doctors in my field of practice requires patients such as Nancy Mathis to be evaluated, diagnosed, and for treatment recommendations to be made to the patient and treatment rendered as required in accordance with the patient and the manor [sic] in which the patient is presented. The evaluation, diagnosis, and treatment which have been described above meet**

or exceeded the standard of care in Houston, Harris County, Texas.....

(Emphasis added.)

Plaintiffs contend that Bocell's affidavit did not specifically establish the orthopedic standard of care and, therefore, is insufficient to sustain the summary judgment. We disagree. An interested expert's affidavit is sufficient to establish compliance with the standard of care if the affiant (1) states that he is familiar with the applicable standard of care, (2) states with specificity each examination and treatment performed, (3) states that the acts of the physician were consistent with the appropriate standard of care, and (4) states that there was no causal connection between the physician's acts and the plaintiff's injury. *Griffin v. Methodist Hosp.*, 948 S.W.2d 72, 74 (Tex.App.—Houston [14th Dist.] 1997, no writ); *see also Wheeler v. Aldama–Luebbert,* 707 S.W.2d 213, 215–17 (Tex.App.—Houston [1st Dist.] 1986, no writ) (expert affidavit stated with specificity each examination, each operative procedure, and each treatment administered to plaintiff; affidavit stated that expert knew what standard of care was for plaintiff and that treatment and diagnosis of plaintiff was standard of care and was same standard of care used by other reasonably prudent physicians acting under same or similar circumstances).

In this case, Bocell's affidavit met the requirements set out in *Griffin.* First, Bocell's affidavit described with specificity each examination and treatment he performed on Nancy Mathis from September 1992, through September 1993. Second, Bocell's affidavit stated he was familiar with the standard of care involved in orthopedic surgery, pre-operative assessment of patients, the technical aspect of orthopedic surgery, post-operative care, and the recognition and treatment of complications. Third, Bocell's affidavit stated that the standard of medical doctors in his field of practice requires patients such as Nancy Mathis to be "evaluated, diagnosed, and for treatment recommendations to be made to the patient and treatment rendered as required in accordance with the patient and the manor [sic] in which the patient is presented." Fourth, Bocell's affidavit stated

that the evaluation, diagnosis, and treatment of Nancy Mathis, which he described in the affidavit, met or exceeded the standard of care in Houston. Finally, Bocell's affidavit states there was no causal connection between the infectious process in Nancy Mathis' knee and the presence of sutures during his treatment of her. We conclude that Bocell's affidavit was sufficient to establish compliance with the standard of care.

Plaintiffs also contend that fact issues exist as to whether Bocell was negligent in failing to remove the ethibond sutures and whether such failure to remove these sutures proximately caused Nancy Mathis' injuries. They assert that although Bocell denied that he was negligent and that he proximately caused Nancy Mathis' injuries, Westerband's controversion of Bocell's testimony raised genuine issues of material fact. Before we examine whether the Westerband affidavit raised a fact issue, we must decide whether the Westerband affidavit is proper summary judgment evidence.

Rule 166a requires that certified or sworn copies of all records or papers referred to in a supporting or opposing affidavit be attached to the affidavit. TEX.R. CIV. P. 166a(f). The last sentence of rule 166a(f) provides: "Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend." Plaintiffs argue that Bocell waived his objections to the defective nature of Westerband's affidavit because Bocell did not get a written ruling on his objection to plaintiffs' failure to attach medical records to Westerband's affidavit. A party must also obtain a ruling on an objection as to defects of form of an affidavit, or the objection is waived. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 n. 7 (Tex.1993); *Roberts v. Friendswood Dev. Co.*, 886 S.W.2d 363, 365 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Thus, Bocell waived his objection to the lack of medical records attached to Westerband's affidavit if the defect is of the type that a party must object to and receive a ruling.

■ There is conflicting authority concerning the difference between a defect of substance and a defect of form in summary judgment evidence. Among the courts of appeals, there is contradiction, if not confusion, distinguishing the two. Rule 166a(f) refers only to "defect of form": there is no mention of its counterpart, defect of substance. The application of one or the other is crucial because formal defects must be objected to and ruled upon by the trial court, while substantive defects may be raised for the first time on appeal.

The concept of defect in form in summary judgment proof first appeared in *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 234 (Tex.1962). The movant's summary judgment affidavits were allegedly defective because (1) they did not state that they were made on the personal knowledge of the affiants; (2) they did not affirmatively show that the affiants were competent to testify to the matters stated therein; (3) sworn or certified copies of the documents referred to in the affidavit were not attached; and (4) they contained conclusions and hearsay. The nonmovant failed to object on any grounds in the trial court. The supreme court found that although there was no merit to the fourth ground, the affidavits were defective based on the other three grounds. The court concluded that "The deficiencies which [nonmovant] now urges appear to be purely formal, and it may be assumed that they would have been corrected upon proper exception in the trial court." *Id.* at 234. It went on to state that "objections of this kind may not be raised for the first time on appeal when it fairly appears from the record that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

The first mention of "substantive defect" appeared in *Landscape Design and Construction, Inc. v. Warren*, 566 S.W.2d 66, 67 (Tex.Civ.App.—Dallas 1978, no writ). In that case, the nonmovant argued that the movant's affidavit was defective because it did not reflect whether the affiant had personal knowledge of the facts recited in the affidavit supporting the motion for summary judgment. The movant urged that the defect was a mere formal defect which was waived by the defendant's failure to object in the trial court. The appellate court rejected that argument, explaining that "[a] defect is rendered 'formal' only when it fairly appears *from the record* that, despite the deficiency, there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 67 (emphasis in the original). The court concluded that the defect was "substantive," rather than "formal" and that no objection to the affidavit was necessary to preserve error on appeal. *Id.*

In interpreting rule 166a(f), several courts have held that the failure to attach copies of the documents relied upon in forming an expert opinion is a defect in substance, and therefore, can be raised for the first time on appeal. *See, e.g., Gorrell v. Texas Utils. Elec. Co.*, 915 S.W.2d 55, 60 (Tex.App.—Fort Worth 1995) (failure to attach sworn or certified affidavits of the extraneous documents referred to in the affidavit was defect in substance and trial court was not required to give offering party the chance to amend), *writ denied*, 954 S.W.2d 767 (Tex.1997) ("We neither approve nor disapprove of the conclusion of the court of appeals that the failure to attach copies of documents referenced in the affidavit of an expert witness 'constituted a defect in the substance of the affidavit.'"); *Rodriquez v. Texas Farmers Ins. Co.*, 903 S.W.2d 499, 506 (Tex.App.—Amarillo 1995, writ denied) ("Failure to attach copies of the documents relied upon in forming ... [expert's] opinion was a fatal defect in the substance of the affidavit, and the trial court properly excluded it from consideration"); *Ceballos v. El Paso Health Care Sys.*, 881 S.W.2d 439, 444–45 (Tex.App.—El Paso 1994, writ denied) ("The failure to attach to, or serve with, Dr. Krumlovsky's and Nurse Williams' affidavits sworn or certified copies of the medical chart or other record referred to therein is not simply a *defect in the form* of his affidavit, but rather is a *defect in the substance* thereof. This is true because there is no way to tell from these affidavits on what specific entries, notations or statements entered on the medical chart they are basing their respective opinions.") (emphasis in original).

Other courts have held that the failure to attach copies of the documents relied upon in forming an expert opinion is a waivable defect in form. *See, e.g., Martin v. Durden,* 965 S.W.2d 562, 565, (Tex.App.—Houston [14th Dist.] 1997, pet. filed) ("[W]e find the failure to attach sworn or certified copies of documents relied upon in expert opinion is merely a defect in form which is waived on appeal if not raised in the trial court."); *Noriega v. Mireles,* 925 S.W.2d 261, 265–66 (Tex.App.—Corpus Christi 1996, writ denied) ("If there is a dispute as to what is contained in the medical records, we agree that the failure to attach the medical records to the summary judgment affidavit would be a substantive defect.... [W]here there is no dispute regarding the contents of the medical records and the treatment the patient received, and in which the disputed issue relates to additional treatment that the patient clearly did not receive but arguably should have, the failure to attach the relevant medical records to the expert witness's affidavit is a formal, rather than a substantive defect."); *Knetsch v. Gaitonde,* 898 S.W.2d 386, 389–90 (Tex.App.—San Antonio 1995, no writ) (characterizing the failure to attach documents to summary judgment affidavit as a defect in form but ultimately disposing of case on substantive ground that affidavit itself raised issue of material fact).

■ How can this conflict be resolved? We believe that the best way to analyze these defects is on the basis of admissibility versus competency of evidence. A defect is substantive if the evidence is incompetent, and it is formal if the evidence is competent but inadmissible. *See* Address by Justice Sarah B. Duncan, *No–Evidence Motions for Summary Judgment: Harmonizing Rule 166a(i) and its Comment,* 21st Annual Page Keeton Products Liability and Personal Injury Law Conference (November 20–21, 1997) 25–26. Formal defects may be waived by failure to object, and if waived, the evidence is considered. Substantive defects are never waived because the evidence is incompetent and cannot be considered under any circumstances. *See* Address by Justice Sarah B. Duncan at 26 ("If evidence is incompetent, it necessarily has no probative value because it either does not relate to a controlling fact, or,

if material, does not tend to make the existence of that fact more or less probable; therefore, there is no need to object to the erroneous introduction of incompetent evidence either to preserve the error in its admission or to ensure it is not treated as 'some evidence.' ") (citing *Aetna Ins. v. Klein,* 160 Tex. 61, 325 S.W.2d 376 (1959)).

■ Following this reasoning, we conclude that the failure of Westerband to attach the medical records on which he relied is a defect of form. Clearly, the affidavit is competent: it recites Mathis' medical history; it establishes the affiant as an expert in the field in which he is testifying; and it presents his expert opinion. The lack of underlying documents on which he relied makes the evidence inadmissible, not incompetent. Therefore, Bocell waived his objection when he failed to obtain a ruling by the trial court.

■ Having determined that Bocell waived his objection to the failure to attach the medical records to Westerband's affidavit, we will now examine whether Westerband's affidavit raises fact issues regarding whether Bocell was negligent and whether such negligence proximately caused Mathis' injury. Specifically, plaintiffs argue material fact questions exist as to whether Bocell was negligent in failing to (1) determine the type and number of sutures that were used in the original surgery performed by Lintner, (2) perform a thorough irrigation and debridement of Nancy Mathis' knee and remove the non absorbable sutures in her knee, and (3) associate the presence of the non absorbable sutures used in the meniscal repair as a nidus of Nancy Mathis' continuing post-operative infection. Plaintiffs also argue material fact questions exist as to whether Nancy Mathis had an infection in her knee and whether the failure to remove all the retained ethibond sutures caused and prolonged her infection.

Lintner's operative report indicated that he placed three ethibond sutures over Nancy Mathis' meniscal tear. Bocell placed Nancy Mathis on antibiotics after he performed an arthroscopic irrigation and debridement of her knee. After months of treating Nancy

Mathis, who complained of painful swelling whenever she discontinued the "parental antibiotics," Bocell reexamined Nancy Mathis arthroscopically. Bocell did not "visualize" any sutures at that time. Westerband's affidavit points out that Bocell reported that " '[i]t was felt that the 2–0 Vicryl that had been used for the patient's previous meniscus repair had been completely resorbed [sic].' " According to Westerband, had Bocell been aware that he should have been looking for ethibond sutures, which are nonabsorbable, he might have meticulously scrutinized the knee to find the presence of such sutures. Nevertheless, Bocell opined that it "would have been an inappropriate course of action to have removed the good tissue visualized ... in order to get down to the underlying sutures with no signs of infection, redness or irritation in the tissue."

Contrary to Bocell's assertion that there was no evidence of any infectious process relating to the presence of sutures during his treatment of Nancy Mathis, Westerband opined that Nancy Mathis suffered a chronic infection as a result of the retained ethibond sutures. Given these two contradicting statements as well as the inconsistencies regarding whether Bocell should have scrutinized the tissue more closely for the presence of ethibond sutures, we conclude that material fact issues exist. Thus, the trial court erred in granting summary judgment in favor of Bocell.

### Dr. Cain

In response to Cain's motion for summary judgment, plaintiffs again relied on the affidavit of Westerband. Attached to Westerband's affidavit were the medical records upon which Westerband relied in forming his opinion. Plaintiffs argue that material fact issues exist as to whether Cain was negligent in failing to (1) determine the number of sutures that were used in the original surgery performed by Lintner, (2) perform a thorough irrigation and debridement of Nancy Mathis' knee and remove the non absorbable sutures remaining in her knee, and (3) associate the presence of non absorbable sutures used in the meniscal repair as nidus of Nancy Mathis' continuing post-operative in-

fection. Plaintiffs also argue material fact questions exist as to whether (1) Nancy Mathis had an infection in her knee and (2) the failure to remove all the retained ethibond sutures caused and prolonged her infection. We agree.

Lintner's operative report indicated that he placed three ethibond sutures over Nancy Mathis' meniscal tear. Although Cain's operative report indicated he removed two ethibond sutures from the repair site and sent them for biopsy and culture, the pathology report indicates that only one was submitted. Later, Buch removed two sutures from the area of Nancy Mathis' posterior meniscus, but his operative report does not indicate whether they were ethibond sutures.

Cain noted in his affidavit that after the initial surgery, Nancy Mathis "apparently developed an infection." The pathology report following Cain's performance of an arthroscopy on her knee indicated the presence of an increased number of chronic inflammatory cells. On the basis of this report, it became apparent to Cain that "there was no active infective process present in the knee at that time [time of the arthroscopy]." Mathis continued to take antibiotics after this arthroscopy. Nevertheless, Cain stated in his affidavit that throughout his treatment of Nancy Mathis, his diagnostic testing did not indicate any infection of the soft tissue. Finally, Cain stated, "There is no evidence as demonstrated by the arthroscopic procedure and the culture and gram stains that there was any infectious process in Dr. Mathis' knee relating to the presence of sutures or removal of sutures during the time of [his] treatment of Dr. Mathis."

Contrary to Cain's assertion that the infection, if any, in Nancy Mathis' knee did not relate to the presence of sutures in her knee, Westerband opined that the failure to remove the retained ethibond sutures caused and prolonged Nancy Mathis' infection. Given these two contradicting statements as well as the inconsistencies in the number or type of sutures removed, we conclude that material fact issues exist. Thus, the trial court erred in granting summary judgment in favor of Cain.

## CONCLUSION

We sustain point of error one. We reverse the summary judgments granted in favor of Bocell and Cain and remand the cause for further proceedings.