**Susan GREEN, Appellant,**

v.

**INDUSTRIAL SPECIALTY CONTRACTORS, INC. and Robert Charles, Appellees.**

No. 01–98–00925–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 25, 1999.

Peter Costea, Houston, for Appellant.

Dean Joseph Schaner, Scott Allen Lemond, Haynes and Boone, L.L.P., Houston, TX, Jerry L. Stovall, Jr., Breazeale, Sachse & Wilson, L.L.P., Baton Rouge, LA, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices TAFT and PRICE.*

## OPINION

MICHAEL SCHNEIDER, Chief Justice.

Appellant, Susan Green, appeals a no-evidence summary judgment granted in favor of the appellees, Industrial Specialty Contractors, Inc. (Industrial) and Robert Charles. We affirm in part and reverse in part.

### Factual Background

This case arises from Green's employment at Industrial as a payroll clerk. Green was hired based on the recommendation of her friend Delores Blevins, the office manager at Industrial's Baytown project. In September of 1995, after approximately six months on the job, Green quit her job with Industrial. According to Green, she was forced to resign because of alleged incidents of sexual harassment by other Industrial employees.

Green contends that soon after she became an employee, Charles, Industrial's Quality Control Coordinator at the Baytown site, made comments about her blue jeans. Green stated she was informed by Blevins that she should not wear her blue jeans anymore because Charles made a comment to Blevins that she should "wear tight blue jeans like the new girl does." Green believed that Charles had supervisory authority over her, and, therefore, began to wear looser fitting jeans. Blevins, in her affidavit attached to the appellee's motion for summary judgment, denies that Charles ever made that comment.

Green also alleges that Paul Borel, a co-worker, passed around some photographs of several individuals on a nude beach and commented to himself that he wished Industrial could hire some employees like this. Green also asserts that Borel ex-plained that one of the individuals was "rather endowed," and that she could get black eyes. However, Green admits that she never saw these pictures and that they were removed from Industrial's Baytown site immediately after Industrial learned of their existence. Green also alleges that Charles, during an evacuation that occurred at the Baytown site due to heavy rains, made a "wet T shirt" comment to Green. According to Green, Charles stated that he wished "we could have a wet T-shirt contest" with Green as a contestant and Charles as a judge. Charles denies ever making the statement.

Next, Green alleged that Borel and Russell Dugan, Industrial's Safety Supervisor, had a conversation where Dugan described a sexual encounter between Dugan and his wife. This conversation was not aimed at Green, and she was not drawn into the conversation. Moreover, Green never informed anyone that she was offended by the conversation. The next alleged incident of harassing behavior involved Elizabeth Bentenson, a female co-worker, blowing up a plastic bag and telling Borel that here was his "blow-job to go." Again, this conversation was not directed at Green, and she never informed anyone that she was offended by the joke. The final incident involved allegations by Green that Charles touched her once on the buttocks. Green admits that she did not actually see Charles touch her, and that she did not report this incident to anyone at Industrial until the day she quit her job.

Based on these alleged incidents, Green sued Industrial and Charles for violating the Texas Commission on Human Rights Act. Specifically, Green asserted causes of action for: (1) hostile work environment sexual harassment; (2) sexual discrimination; (3) constructive discharge; (4) retaliatory discharge; (5) intentional infliction of emotional distress; and (6) assault and battery. Industrial and Charles filed a no-

* The Honorable Frank C. Price, former Justice, Court of Appeals for the First District of Texas at Houston, participating by assignment.

evidence motion for summary judgment on all of Green's claims. The motion was granted by the trial court, and this appeal followed.

### Challenge to the Summary Judgment Affidavits

Before addressing whether the trial court erred in granting the appellees' motion for summary judgment, we must examine Green's claim that the appellees' summary judgment affidavits were improper. Green, without pointing to any specific statements within the affidavits, contends we should strike the affidavits because they contain conclusory, self-serving statements, and statements of opinion and hearsay. *See* Tex.R. Civ. P. 166a(f). Industrial and Charles, citing *Mathis v. Bocell,* 982 S.W.2d 52 (Tex.App.—Houston [1st Dist.] 1998, no pet.), contend that Green has not preserved this issue for appellate review because she failed to obtain a ruling from the trial court on any of her objections. *Id.* 58. We agree, in part, with the appellee's argument.

■■■ First, an objection that an affidavit is conclusory is an objection to the substance of the affidavit that can be raised for the first time on appeal. *City of Wilmer v. Laidlaw Waste Sys., Inc.,* 890 S.W.2d 459, 467 (Tex.App.—Dallas), *aff'd,* 904 S.W.2d 656, 660–61 (Tex.1995). Thus, Green need not have obtained a ruling on her objection to raise this objection on appeal. *Id.* However, contrary to Green's assertion, we find that the affidavits are not conclusory. Each affidavit was based on the personal knowledge of the affiant derived from his or her work at Industrial. Moreover, the affidavits provided the underlying factual basis for their statements. *See Rizkallah v. Conner,* 952 S.W.2d 580, 587 (Tex.App.—Houston [1st Dist.] 1997, no writ). We find that the affidavits were not conclusory.

■■■ With respect to Green's complaint that the affidavits contained statements of opinion and hearsay, we find that she has not preserved these complaints for appellate review. An objection that an affidavit contains statements of opinion or hearsay is an objection to the form of the affidavit. *Einhorn v. LaChance,* 823 S.W.2d 405, 410 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). Thus, to preserve these complaints for appellate review, Green had to obtain a written ruling on her objections. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 343 n. 7 (Tex.1993). Green did not do so, and, therefore, has failed to preserve these objections for appellate review. *Mathis,* 982 S.W.2d at 58.

### Summary Judgment in Favor of Industrial and Charles

In one point of error, Green complains the trial court erred in granting summary judgment in favor of Industrial and Charles.

#### Standard of Review

In a no-evidence summary judgment, the movant must specifically state the elements as to which there is no-evidence. Tex.R. Civ. P. 166a(i). The burden then shifts to the non-movant to bring forth evidence that raises a fact issue on the challenged elements. *Id.* When reviewing the grant of a no-evidence summary judgment, we review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997). A no-evidence summary judgment is improperly granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact. *Macias v. Fiesta Mart, Inc.,* 988 S.W.2d 316, 317 (Tex.App.—Houston [1st Dist.] 1998, no pet.); Tex.R. Civ. P. 166a(i). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion." *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). Conversely, more than a scintilla exists when the evi-

dence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995).

### Grounds for Summary Judgment

In their motion for summary judgment, Industrial and Charles asserted that Green had no evidence to support any of her claims. On appeal, Green only attacks the trial court's decision to grant summary judgment on her hostile work environment, constructive discharge, and assault and battery claims.[1] Therefore, we address each of these claims accordingly.

### Sexual Harassment—Hostile Work Environment

■ To establish a statutory claim for sexual harassment based on a hostile work environment, the plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based upon sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Ewald v. Wornick Family Foods Corp.*, 878 S.W.2d 653, 659 (Tex.App.—Corpus Christi 1994, writ denied). In their motion for summary judgment, Industrial and Charles asserted that Green had no evidence to establish that: (1) the alleged incidents of harassment created an objective and subjective hostile work environment (*i.e.*, the harassment did not affect a term, condition, or privilege of employment); and (2) Industrial knew or had reason to know of the alleged sexual harassment.

### The Applicable Law

The Texas Human Rights Act is modeled after federal law with the purpose of executing the policies set forth in Title VII of the federal Civil Rights Act of 1964. *Ewald*, 878 S.W.2d at 658. In *Meritor Sav. Bank FSB v. Vinson*, the United States Supreme Court set out the applicable standard for sexual harassment claims based on an alleged hostile work environment. 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (reaffirming the *Meritor* standard). Title VII is violated when the workplace is permeated with discriminatory intimidation, ridicule, and insults that are sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment. *Meritor*, 477 U.S. at 64, 106 S.Ct. at 2405–06.

■ In *Harris*, the Supreme Court recognized that this standard takes a middle path between making actionable any conduct that is "merely offensive and requiring the conduct to cause [a] tangible psychological injury." 510 U.S. at 21, 114 S.Ct. at 370. Conduct that is not severe enough to create a work environment that a reasonable person would find hostile or abusive will not trigger Title VII's protections. *Id.* at 22, 114 S.Ct. at 370–71. Additionally, if the alleged victim does not subjectively find the environment abusive or hostile, the conduct has not altered a condition, term, or privilege of employment, and no cause of action arises. *Id.*

■ In determining whether an environment is abusive and hostile, we must review the totality of the circumstances, including: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes

---

1. Because Green does not challenge the trial court's grant of summary judgment as it relates to her claims for sexual discrimination, retaliation, and intentional infliction of emotion distress, we need not address them on appeal. *Happy Harbor Methodist Home, Inc. v. Cowins*, 903 S.W.2d 884, 886 (Tex.App.—Houston [1st Dist] 1995, no writ); Tex.R.App. P. 38.1(h).

with an employee's work performance. *Id.* at 23, 114 S.Ct. at 371. To find merit in a claim of a sexually hostile work environment, we must conclude that the conduct complained of expresses extreme insensitivity against women and is so egregious in nature so as to alter the conditions of employment and destroy women's equal opportunity in the workplace. *DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 593 (5th Cir.1995); *see also Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (extending Title VII to cover same sex sexual harassment).

### Discussion

■■■ The initial question we must decide is whether the factual allegations Green presented to the trial court in her pleadings and summary judgment evidence rise to the level of harassment specified in *Meritor.* Simply put, did Green show that Industrial's Baytown project site was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to create a hostile work environment? Green contends that the alleged incidents of harassment create a fact issue as to whether she was subjected to a hostile work environment. We disagree.

First, Green, in her summary judgment evidence, concedes that the only comment directed at her was the alleged "wet T-shirt" comment made by Charles. Green never saw the photographs Borel brought to the office showing nude individuals on the beach. Moreover, the conversation between Dugan and Borel regarding their sexual experiences and the "blow job" joke made by Bentenson were not directed at Green, and no attempt was made to draw her into these conversations. Additionally,

Green never reported to anyone in management that she was offended by these comments. With respect to the alleged battery by Charles, Green did not report the incident until the day she resigned. Furthermore, Green herself admits that she never actually saw Charles touch her.

Green asserts that an examination of the alleged incidents, in light of the Supreme Court's decisions in *Harris v. Forklift Systems, Inc., Burlington Indus. Inc. v. Ellerth* and *Faragher v. City of Boca Raton,* warrant a finding that summary judgment was improper.[2]

In *Harris,* the plaintiff alleged that her employer discriminated against her on the basis of her gender by: (1) making unwanted sexual innuendos; (2) asking her and other employees to pull change from his front pocket; (3) asking her to go to a motel with him. 510 U.S. at 19, 114 S.Ct. at 369. The district court granted summary judgment in favor of the employee, and the court of appeals affirmed. The Supreme Court reversed the decisions of the lower courts. However, contrary to Green's position, the Court did not find that a hostile work environment existed. The Court reversed the decisions of the lower courts and remanded the case because the wrong standard was applied in granting summary judgment. *Id.* at 27, 114 S.Ct. at 371. Therefore, we find *Harris* distinguishable from the present dispute

We also find *Ellerth* and *Faragher* distinguishable. Green claims that the Supreme Court in *Ellerth* found actionable sexual harassment based on "three separate incidents with a sexual connotation." First, unlike the present dispute, the issue in *Ellerth* was whether an employer could be held vicariously liable for the acts of a

---

2. Green also relies on *Williamson v. City of Houston,* 148 F.3d 462 (5th Cir.1998), to support her contention that a fact issue exists precluding summary judgment. *Williamson* is distinguishable from the present case for two reasons. First, the plaintiff in *Williamson* was harassed on a daily basis for 18 months. *Id.* at 463. Here, we have allega-

tions of five incidents over a 6–month period. Second, the plaintiff in *Williamson* made numerous complaints to management regarding the alleged harassment. *Id.* at 464. In contrast, Green did not complain about the alleged incidents of harassment to anyone on Industrial's management staff.

supervisor who created a hostile work environment by making explicit threats to change a subordinate's terms or conditions of employment. *Ellerth,* 118 S.Ct. at 2265, 524 U.S. 742. Additionally, the facts of *Ellerth* are much more egregious than those in the present case. In *Ellerth,* the plaintiff's boss, who had the power to make hiring, firing, and promotional decisions, made continuous remarks and offensive comments to the plaintiff regarding her breasts, buttocks, and legs. *Id.* 524 U.S. 742, 118 S.Ct. at 2263. The Supreme Court noted that these comments could be construed "threats to deny [the plaintiff] tangible job benefits." *Id.* In *Faragher,* the issue was also an employer's vicarious liability for the discriminatory acts of a supervisory employee.524 U.S. 775, 118 S.Ct. 2275, 2292–93 (1988). In *Faragher,* the plaintiff presented evidence that during a five-year period, two of her supervisors with decision-making authority made unwanted sexual contact and threatened adverse employment action if she did not consent to sexual relations. *Id.* 524 U.S. 775, 118 S.Ct. at 2280–81. The plaintiff also presented evidence that the two supervisors routinely touched other female employees, commented on their bodies, and asked other female employees for sex. *Id.* 524 U.S. 775, 118 S.Ct. at 2281.

In contrast to the facts of *Ellerth* and *Faragher,* Green has presented no evidence that anyone at Industrial threatened to change or alter the terms or conditions of her employment unless she consented to a sexual relationship. In contrast to the facts of *Ellerth and Faragher,* Green's allegations of harassment involved one alleged comment directed at her, and four other incidents that occurred over a six-month period. Additionally, even though Green acknowledged that she received a copy of Industrial's anti-harassment policy, she never made a complaint in accordance with that policy. *See Garcia v. Schwab,* 967 S.W.2d 883, 887 (Tex.App.—Corpus Christi 1998, no pet.) (noting that plaintiff failed to voice a complaint regarding supervisor's alleged conduct). In short, we

find *Ellerth* and *Faragher* inapplicable to the present dispute.

Finally, an examination of *Garcia v. Schwab,* reveals that summary judgment was appropriate in this case. In *Garcia,* the defendant's president and general manager allegedly: (1) looked at and commented about the plaintiff's breasts; (2) touched his genitals in front of the plaintiff; (3) discussed sex with the plaintiff; (4) made comments about the appearances of clients and other female employees; and (5) made sexual references in an attempt to sexually arouse the plaintiff. *Id.* at 885–87. The court affirmed the summary judgment granted in favor of the employer. While the court noted that this conduct was "ill-mannered" and "undesirable," it found, as a matter of law, that the alleged incidents "did not amount to the quality or severity of misbehavior designed to subject Garcia to sufficiently hostile or abusive conditions to materially alter her condition of employment." *Id.* at 887; *see also Cox & Smith, Inc. v. Cook,* 974 S.W.2d 217 (Tex.App.—San Antonio 1998, no writ) (finding that five incidents of sexual behavior did not create a hostile work environment); *Soto v. El Paso Natural Gas Co.,* 942 S.W.2d 671 (Tex.App.—El Paso 1997, no writ) (noting that a few isolated sexual remarks or conduct does not create a hostile work environment); *Watts v. Kroger Co.,* 147 F.3d 460 (5th Cir.1998) (finding supervisor's sexual jokes, sexual innuendos, and unwanted touching of plaintiff's buttocks insufficient to create hostile work environment).

Even if we accept Green's allegations of sexual harassment as true, after examining the factors provided by the Supreme Court in *Harris,* and after reviewing the summary judgment record for frequency of the alleged offensive contact, its severity, and the presence of physical threats or humiliation, we conclude that Green has failed, as a matter of law, to demonstrate that her working conditions were so severely degrading and plagued with discriminatory

abuse and hostility so "as to warrant invocation of the Human Rights Act protections." *Garcia,* 967 S.W.2d at 887; *see also Faragher,* 524 U.S. 775, 118 S.Ct. at 2283 (noting that simple teasing, offhand comments, and isolated incidents do not create a hostile work environment). Therefore, we find that the trial court did not err in granting Industrial and Charles summary judgment on Green's sexual harassment hostile work environment claim.[3]

### Constructive Discharge

Constructive discharge occurs when an employer makes conditions so intolerable that an employee reasonably feels compelled to resign. *Davila v. Lockwood,* 933 S.W.2d 628, 630 (Tex.App.—Corpus Christi 1996, no writ); *Hammond v. Katy Ind. Sch. Dist.,* 821 S.W.2d 174, 177 (Tex.App.—Houston [14th Dist.] 1991, no writ). To find a constructive discharge, it must be determined whether or not a reasonable person in the employee's position would have felt compelled to resign as a result of the employer's discriminatory conduct. *Hammond,* 821 S.W.2d at 177.

In their motion for summary judgment, Industrial and Charles asserted that Green had no evidence establishing that her working conditions were so intolerable that she was forced to resign. In response, Green asserts that she was forced to resign to avoid further harassment one day after Charles allegedly touched her buttocks. To support her contention, Green points to an excerpt from her deposition, which states:

Q: Okay. Okay. Now I'm going to try to get into some details of your actual complaint.

My understanding is that you feel that you had to quit your position at [Industrial]. Again, correct me if I'm misstating this—had to quit your position at [Industrial] because you felt that you

were being sexually harassed while you were there; is that correct?

A: Correct.

Without pointing to any other specific evidence, Green argues that summary judgment on her constructive discharge claim was improper. We disagree.

Green's general allegations of harassment, without more, are insufficient to raise a fact issue as to whether her working conditions were so intolerable that a reasonable person would be forced to resign to avoid further harassment. *Hammond,* 821 S.W.2d at 178. To avoid summary judgment on her constructive discharge claim, Green is required to show a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment. *Passons v. Univ. of Texas at Austin,* 969 S.W.2d 560, 565 (Tex.App.—Austin 1998, no pet.); *Epps v. NCNB Texas,* 7 F.3d 44, 46 (5th Cir.1993). Green has not made such a showing.

We find that the trial court did not err in granting Industrial and Charles summary judgment on her constructive discharge claim.

### Assault and Battery

The elements for a cause of action for assault and battery are the same in civil and criminal suits. *Price v. Short,* 931 S.W.2d 677, 687 (Tex.App.—Dallas 1996, no writ) (citing *Texas Bus. Lines v. Anderson,* 233 S.W.2d 961, 964 (Tex.Civ. App.—Galveston, writ ref'd n.r.e.)). A person commits an assault if he "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." TEX. PENAL CODE ANN. § 22.01(a)(3) (Vernon 1994). In their motion for summary judgment, Industrial and Charles contended that Green had no evi-

---

**3.** Because we find that the alleged incidents do not constitute a hostile work environment, we need not address Industrial's other arguments relating to Green's sexual harassment claim.

dence that Charles intentionally or knowingly patted Green on the buttocks. Therefore, to create a fact issue in this regard, Green must bring forth evidence that would enable reasonable minds to differ in their conclusion as to whether Charles intentionally patted Green's buttocks. *Crye*, 907 S.W.2d at 499

 To support her claim that summary judgment was improper, Green brought forth evidence that she and Charles were in tight quarters when the alleged assault occurred. She states that Charles intentionally "raised up out of the boxes to help Ms. Blevins, and patted me on my rear and told me how good I looked lately. He turned around as I was straightening up to go to my office and reached over and hit me on the rear."[4] Moreover, Green also brought forth evidence that she found the contact offensive. In her deposition, Green stated that nobody had the right to touch her, "not on [her] rear, not on [her] person." According to Green, the contact made her feel "very upset." Charles denies touching Green. Furthermore, Blevins and Bentenson, who were in the room when the alleged touch occurred, deny seeing Charles touch Green, or hearing Green complain that he had done so.

Viewing this evidence in the light most favorable to Green, we believe she has brought forth more than a scintilla of evidence to raise a fact issue as to whether Charles intentionally touched her on the buttocks. Therefore, we reverse the trial court's grant of summary judgment in favor of Charles on Green's assault and battery claim.

### Conclusion

The judgment of the trial court is affirmed with respect to Green's claims against Industrial. With respect to her claims against Charles, we affirm the summary judgment granted on her sexual

harassment and constructive discharge claims. However, we reverse the trial court's grant of summary judgment on her assault and battery claim against Charles and remand the case for further proceedings.

---

4. However, later in her deposition, Green conceded that she never actually saw Charles touch her.