In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00073-CR


______________________________




ANDREW LEE HOFFMAN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 76th Judicial District Court


Titus County, Texas


Trial Court No. CR15,279




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 A Titus County jury found Andrew Lee Hoffman guilty of indecency with a child by contact
and assessed punishment at twenty years' imprisonment and a $10,000.00 fine. See Tex. Penal
Code Ann. § 21.11 (Vernon 2003). He appeals that conviction, challenging the legal and factual
sufficiency of the evidence to support it. We will affirm.

I. THE EVIDENCE

 Hoffman was A.E.'s mother's boyfriend at the time. A.E. lived, at the time at issue and the
time of trial, with her maternal grandmother, who had custody of A.E. A.E., twelve years old at the
time of trial, testified that, on an overnight visit to her mother's house, she and Hoffman were lying
in the living room floor watching a movie. Her brother had fallen asleep on the couch in the living
room, and her mother had gone to her bedroom to go to sleep. It was then, according to A.E., that
Hoffman touched her inappropriately: "He put his hands down my panties next to my private area." 
She went on to explain that he touched her private area with his hand and moved it around for, A.E.
estimated, six or seven minutes. 

 A.E. testified that Hoffman did not say anything to her and she said nothing to him. She did
not tell him to stop or shove him away because she was scared of Hoffman, having seen him act
violently toward her mother. A.E. testified that she was in the third or fourth grade when this
incident happened. 

 The State also elicited the testimony of Cesar Munoz, a detective with the Mount Pleasant
Police Department. Munoz described the initiation of the investigation and the procedure followed
concerning A.E.'s interview at the Child Advocacy Center. (1) Munoz explained that it was difficult
to make contact with Hoffman at first but that, once contact was made, Hoffman was cooperative. 
On cross-examination, Munoz testified that Hoffman did not admit having touched A.E.
inappropriately. In fact, according to Munoz, Hoffman was upset by and denied the allegations. 

II. STANDARDS OF REVIEW

 When addressing legal sufficiency complaints, we apply well-known standards: we consider
the evidence in the light most favorable to the verdict and determine whether, based on that evidence
and reasonable inferences therefrom, a rational fact-finder could have found the essential elements
of the crime beyond a reasonable doubt. Rollerson v. State, 227 S.W.3d 718, 724 (Tex. Crim. App.
2007); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury, as sole judge of the
witnesses' credibility and the weight to be given their testimony, is free to accept or reject any or all
of the evidence presented by either side. See Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim.
App. 2000). We must give deference to "the responsibility of the trier of fact to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts." Hooper, 214 S.W.3d at 13 (citing Jackson v. Virginia, 443 U.S. 307, 318-19
(1979)).

 Evidence that rationally supports a guilty verdict beyond a reasonable doubt under the legal
sufficiency standard can still be factually insufficient. Marshall v. State, 210 S.W.3d 618, 625 (Tex.
Crim. App. 2006), cert. denied, ___ U.S. ___, 128 S.Ct. 87 (2007). Evidence is factually insufficient
to support the verdict if it is clearly wrong or manifestly unjust or against the great weight and
preponderance of the evidence. Id. The difference between the legal and factual sufficiency
standards is that "the former requires the reviewing court to defer to the jury's credibility and weight
determinations while the latter permits the reviewing court to substitute its judgment for the jury's
on these questions 'albeit to a very limited degree.'" Rollerson, 227 S.W.3d at 724 (quoting Watson
v. State, 204 S.W.3d 404, 416-17 (Tex. Crim. App. 2006)); Marshall, 210 S.W.3d at 625.

III. LEGALLY SUFFICIENT EVIDENCE

 Hoffman first challenges the evidence that shows there was any contact. As Hoffman
acknowledges, the testimony of a child victim alone is sufficient to support a conviction for
aggravated sexual assault or indecency with a child. See Tex. Code Crim. Proc. Ann. art. 38.07(a)
(Vernon 2005); Scott v. State, 202 S.W.3d 405, 408 (Tex. App.--Texarkana 2006, pet. ref'd); Tear
v. State, 74 S.W.3d 555, 560 (Tex. App.--Dallas 2002, pet. ref'd); Empty v. State, 972 S.W.2d 194,
196 (Tex. App.--Dallas 1998, pet. ref'd). A.E. testified that Hoffman slid his hand into her panties,
touched her private area, and moved his hand around for six to seven minutes. This evidence is
legally sufficient such that a jury could have reasonably found beyond a reasonable doubt that
contact occurred. 

 Hoffman also specifically contends that there are no facts in this case from which Hoffman's
intent to engage in sexual contact can be inferred. He emphasizes that there is no evidence of
Hoffman laughing or smiling during the alleged incidents nor any evidence of remarks he made
during the alleged encounter. A jury may infer the intent to arouse or gratify the sexual desire from
a defendant's laugh or smile. See Turner v. State, 600 S.W.2d 927, 931 (Tex. Crim. App. [Panel
Op.] 1980). That does not mean, however, that there must be such evidence to prove intent to arouse
or gratify the sexual desire. A jury may also infer the requisite intent from the conduct of, remarks
by, and circumstances surrounding the act engaged in by the accused. Dues v. State, 634 S.W.2d
304, 305 (Tex. Crim. App. [Panel Op.] 1982); Russo v. State, 228 S.W.3d 779, 793 (Tex.
App.--Austin 2007, pet. ref'd).

 Hoffman likens his case to that of Baker v. State, 781 S.W.2d 688 (Tex. App.--Fort Worth
1989, pet. ref'd). In Baker, the complainant testified that she had fallen and cut her head while
visiting her friend. 781 S.W.2d at 688. Her friend's uncle, defendant Baker, picked up the
complainant and carried her to the bathroom to wash the blood from her head. Id. The complainant
explained that Baker placed one of his arms under her neck and the other arm underneath her thighs. 
Id. at 688-89. She also described the incident as one in which "one hand was on [her] shoulder and
the other hand was in [her] crotch." Id. at 689. Baker denied the allegation that he touched her
genital area and testified that, if he had done so, inadvertently, he did so without the requisite intent
to arouse or gratify his sexual desire. Id.

 The Fort Worth court, noting that intent can be inferred, concluded that there were no facts
from which the intent to engage in sexual contact could be inferred. Id. There was no evidence of
a smile, a laugh, or a remark that would show an intent to arouse or gratify his sexual desire. Id. The
court pointed out that the complainant even testified that she was uncertain if Baker put his hand on
her crotch purposefully or accidentally. Id. The complainant's friend also testified that she had seen
the entire incident and that she never saw Baker touch the complainant's genital area. Id. at 690. The
court went on to explain how the State's evidence of extraneous offenses failed to show the requisite
intent and ultimately concluded that no rational jury could have found the element of intent beyond
a reasonable doubt. Id. 

 Here, while, as in Baker, there is no evidence of a smile, laugh, or remark, we note the very
different circumstances surrounding the contact. A.E. testified the touching occurred at night when
she and Hoffman were lying on the living room floor. The contact also occurred after A.E.'s brother
went to sleep and after her mother went to her bedroom for the night, leaving Hoffman and A.E.
isolated. The fact that Hoffman chose a time and a place where the risk of being seen was lower to
place his hand on A.E.'s private parts and move his hand around suggests an intent to arouse or
gratify Hoffman's sexual desire. See Abbott v. State, 196 S.W.3d 334, 341 (Tex. App.--Waco 2006,
pet. ref'd) ("thus the jury could infer from Abbott's conduct of touching W.T.'s genitals that it was
done with intent to arouse or gratify his sexual desire"). Moreover, the record reveals no
circumstances that would suggest another purpose or intent, as it did in Baker when the defendant
was carrying a bleeding child to the bathroom for medical attention. From the circumstances here,
the jury could have inferred the intent to arouse or gratify Hoffman's sexual desire. The evidence
before us is legally sufficient such that a rational jury could have found beyond a reasonable doubt
that Hoffman committed the essential elements of indecency with a child by contact. We overrule
Hoffman's first point of error. 

IV. FACTUALLY SUFFICIENT EVIDENCE

 We point out that A.E.'s testimony concerning the incident is largely unchallenged. Hoffman
seems to rely on the testimony of Detective Munoz to serve as a denial of the allegations. Munoz
did testify that Hoffman denied the allegations and was upset and, seemingly, surprised. It was
within the jury's purview to resolve any conflicts in the witnesses' testimony, as it was the sole judge
of the weight and credibility of the witnesses and their testimony. See Cain v. State, 958 S.W.2d
404, 408 (Tex. Crim. App. 1997); Tear, 74 S.W.3d at 561; Empty, 972 S.W.2d at 196. Even taking
that evidence as evidence of Hoffman's response to the allegations, we cannot say that the evidence
of guilt was factually insufficient. We cannot say that the jury's verdict, based on the evidence before
us, was clearly wrong or manifestly unjust or that it was against the great weight and preponderance
of the evidence. We overrule Hoffman's second point of error.




V. CONCLUSION

 Having concluded that there is legally and factually sufficient evidence to support the
conviction for indecency with a child by contact, we affirm the trial court's judgment.



 Jack Carter

 Justice


Date Submitted: September 8, 2008

Date Decided: October 2, 2008


Do Not Publish
1. This videotape was not admitted into evidence.



s an agent of Timberjack, it does not state whether he was
an agent during the relevant periods or how his status as an agent put him in a position to
gain such knowledge. Nor is it readily apparent that Damron's status as an agent of
Timberjack would put him in such a position. Further, there is other summary judgment
evidence in the form of an affidavit by Robinson which challenges whether Damron was
in a position to acquire personal knowledge of the relevant facts. The presence of
Robinson's affidavit in the summary judgment evidence distinguishes this case from
Requipco, Inc. v. Am-Tex Tank & Equip., 738 S.W.2d 299, 301 (Tex. App.—Houston [14th
Dist.] 1987, writ ref'd n.r.e.), cited by Timberjack.
          Finally, Damron's affidavit states that the facts laid out in the affidavit are based on
an attached statement of account. The affidavit did not have any attachments. Rule
166a(f) of the Rules of Civil Procedure requires copies of all documents referred to in an
affidavit to be attached to the affidavit. Tex. R. Civ. P. 166a(f). There is some conflict
among the courts about whether the failure to attach referenced documents to an affidavit
is a waivable defect of form, or a more serious defect of substance. Gorrell v. Tex. Utils.
Elec. Co., 954 S.W.2d 767 (Tex. 1997); Mathis v. Bocell, 982 S.W.2d 52, 59–60 (Tex.
App.—Houston [1st Dist.] 1998, no pet.). We need not decide that issue here, however. 
We merely note that Timberjack's failure to attach the documents only serves to
exacerbate the previously mentioned defects.
          For the foregoing reasons, we find the Damron affidavit is not competent summary
judgment evidence and should not have been considered by the trial court.
          Written Agreements
          The only remaining evidence supporting the summary judgment is the written
agreements. In its motion for summary judgment, Timberjack stated that, in order to prove
its cause of action, it had to show (1) execution and delivery of the agreement to pay, (2) a
promise to pay according to the terms of the agreement, (3) default by Robinson, (4) a
showing of the sum due on the agreement, and (5) Timberjack's status as holder of the
agreement. Robinson disputes that there ever existed a valid agreement between the
parties, what type of agreement it may have been, whether he breached that agreement,
and what any proper damages would be. 
          We cannot hold that Timberjack has proven its entire cause of action as a matter
of law by looking at the written agreements alone. Specifically, there is no way to
determine if Robinson is in default and if so, what sum is due on the agreement. We must
resolve any doubts in favor of Robinson. Nixon, 690 S.W.2d at 548–49. 
Conclusion
          We hold that Timberjack did not timely raise the issue of Robinson's failure to file
a verified denial in the trial court. It cannot raise this issue for the first time on appeal. We
also hold that Timberjack failed to include Robinson's written responses to its requests for
admissions as a basis for its written motion for summary judgment. Again, it cannot raise
this issue for the first time on appeal. We further hold that the affidavit by Tony Damron
is not competent summary judgment evidence and that the remaining evidence is
insufficient to support a granting of summary judgment in Timberjack's favor. 
          Accordingly, we reverse the summary judgment and remand this cause to the trial
court for further proceedings.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      September 12, 2005
Date Decided:         October 7, 2005